# Richmond

YELLOW CAB COMPANY OF VIRGINIA, INCORPORATED V. ERNEST R. ADINOLFI.

January 20, 1964.

Record No. 5693.

Present, All the Justices.

The opinion states the case.

*Richard L. Williams (Henry H. McVey, III; Battle, Neal, Harris Minor & Williams*, on brief), for the plaintiff in error.

*Sidney L. Berz (Sherman B. Lubman*, on brief), for the defendant in error.

*Ralph H. Ferrell, Jr.; Hugh V. White, Jr.; Hunton, Williams, Gay, Powell & Gibson*, on brief, for Virginia Passenger Bus Association, *amicus curiae*.

WHITTLE, J., delivered the opinion of the court.

On July 24, 1961 a motion for judgment on behalf of Adinolfi was filed in the Richmond court against Carrol Rollins. In the

motion Adinolfi alleged that he was injured while operating a cab in the city of Richmond when it was struck by a Buick car owned and operated by Rollins.

A copy of the motion was served upon the cab company, the employer of Adinolfi and owner of the cab. Grounds of defense were filed by the cab company in its own name pursuant to § 38.1-381, 1953 Replacement Volume, Code of Virginia.

The grounds of defense filed on behalf of the company asserted that it was not liable to Adinolfi under any circumstances and further that Adinolfi had received all benefits to which he was entitled under the law.

A pretrial conference was ordered to decide the issues raised by the grounds of defense, and counsel for the parties stipulated certain essential facts of which the following are relevant to the case:

(1) That Adinolfi was at the time of the accident an employee of the cab company which had duly qualified as a self-insurer under Virginia Code (1950) § 46.1-395, 1958 Repl. Vol., and

(2) Rollins was at the time of the accident operating an "uninsured motor vehicle" as the term is defined in Virginia Code § 38.1-381(c), 1953 Repl. Vol.

It was the contention of the cab company that as a self-insurer it was not liable to a person operating or riding in its vehicle who received injuries due to the negligence of an "uninsured motorist" as the term is defined in the Code of Virginia and that Adinolfi as its employee had been awarded workmen's compensation which was his exclusive remedy.

It was later conceded that the contention that Adinolfi's claim for personal injuries against the cab company was barred by virtue of his having received workmen's compensation benefits from the company had been answered in the negative by this court in the case of *Horne v. Superior Life Ins. Co.*, 203 Va. 282, 287, 288, 123 S.E. 2d 401, 405 (1962).

An order was entered on April 27, 1962 overruling the cab company's defense raised by its grounds of defense and thereby denying the cab company's contention that it, as a self-insurer, was not required to provide uninsured motorist coverage for its drivers.

Subsequently, on May 25, 1962, an order was entered awarding a judgment on behalf of Adinolfi against Rollins in the amount of $4,000.00.

On August 9, 1962 a motion for judgment was filed on behalf of

Adinolfi against the cab company to enforce the judgment.

Grounds of defense were filed by the cab company in which it was asserted that the cab company, as a duly qualified self-insurer, was not liable to Adinolfi on the judgment obtained against Rollins.

Adinolfi then filed a motion for summary judgment, whereupon the lower court entered an order rendering judgment for Adinolfi against the cab company. We granted the cab company a writ of error.

The cab company contends that under its assignments of error, two questions are involved:

"(1)  Does Section 38.1-381 of the Code of Virginia require, or by implication require, the self-insurer to provide protection for damages resulting from the negligence of an uninsured motorist?"

"(2)  Is the application of uninsured motorist legislation to a self-insurer a denial of the due process of law and the equal protection of the laws as guaranteed by Section 1 of the 14th Amendment to the Constitution of the United States?" In our view of the case this question is not reached.

The present uninsured motorist legislation consists of three parts in three separate titles of the Code. The first part is §§ 46.1-167.1 through 167.6 which provides for the collection of a $20.00 annual fee for each uninsured vehicle registered with the Division of Motor Vehicles. It also deals with other registration requirements. The second part of the legislation is § 38.1-381 which sets forth certain mandatory provisions for each automobile insurance contract, one of which is the uninsured motorist coverage. This section also contains special provisions relating exclusively to uninsured motorist coverage. The third part is §§ 12-65 through 12-67, creating the uninsured motorist fund and setting forth how it is to be administered and controlled, specifying the method by which certain annual payments of the fund are to be ascertained and distributed by the State Corporation Commission to automobile companies as a form of additional premium income.

The intent as expressed in § 12-66 is that each policyholder shall have the costs of the uninsured motorist endorsement or provision reduced through the adjustments in rates by those companies writing the coverage, so that as much as possible of the costs of this coverage shall be borne, not by the policyholder, but by those motor vehicle registrants who are uninsured and pay the $20.00 registration fee which goes into the fund.

It is the contention of the cab company that § 38.1-381 does not impose upon a self-insurer the obligations of a liability insurance company under the mandatory uninsured motorist endorsement.

It should be noted that the term "self-insurer" is not strictly accurate as a definitive term. "Insurance is a matter of contract", 1 Couch on Insurance 2d, § 1:4, page 30. No entity actually insures itself. A necessary element of insurance is the existence of a contract between insurer and insured, and an entity cannot contract with itself. 1 Couch on Insurance 2d, Chapter 2, pages 105-17. The cab company, for example, is not an insurance company. It issues no policies, collects no premiums and files no insurance rates with the State Corporation Commission.

Code Section 38.1-381 is the heart of Virginia's uninsured motorist law. The section is found in Article 4 dealing with liability insurance policies, in Chapter 8, entitled "The Insurance Contract" of Title 38.1 of the Code of Virginia, 1950, as amended, which relates to "Insurance".

The section is clear in its language affecting the question here involved. It relates to what provisions must be incorporated in a policy. It presupposes the existence of a policy. If there is no policy these provisions do not apply. Subsection (a) begins with the words "No policy or contract * * * " and the words "Policy or contract" are repeated at two other places in this subsection. The same words "policy or contract" are used in subsection (b). Subsection (c) refers to the application of "the policy".

Subsection (e) refers to the service upon "the insurance company issuing the policy", and subsection (e)(1) uses identical language. Subsection (f) refers to subrogation rights and provides that any recovery made against the uninsured motorist shall be paid "to the insurance company". Subsection (h) excludes workmen's compensation policies from the operation of subsections (a) and (b), but goes on to provide that nothing in subsection (h) shall be construed to limit the liability "of the insurance company insuring motor vehicles" in certain situations. It is evident that § 38.1-381 deals only with policies, contracts, and insurance companies. Thus a self-insurer is not affected by the principal parts of § 38.1-381.

Adinolfi's position seems to be that the General Assembly chose not to recognize self-insurers as a separate class and according to this reasoning and contention the General Assembly has placed self-insurers in the class of insurance companies, and a certificate of self-insurance becomes, in effect, a liability insurance policy issued by the

self-insurer to itself. Such reasoning is refuted by the only reference to a self-insurer in Code Section 38.1-381 where subsection (c) reads as follows:

"(c) As used in this section, the term *'bodily injury'* shall include death resulting therefrom; the term *'insured'* as used in subsections (b), (d), (f), and (g) hereof, means the named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above; and the term *'uninsured motor vehicle'* means a motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by § 46.1-1(8), as amended from time to time, or (ii) there is such insurance but the insurance company writing the same denies coverage thereunder, (iii) there is no bond or deposit of money or securities in lieu of such bodily injury and property damage liability insurance and (iv) the owner of such motor vehicles has not qualified as a self-insurer under the provisions of § 46.1-395. A motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown; provided that recovery under the endorsement or provisions shall be subject to the conditions hereinafter set forth." (Italics by the legislature).

Here the legislature is defining "an uninsured motor vehicle" only for the purpose of uninsured motorist coverage—not for registration and payment of the additional $20.00 fee under Code § 46.1-167.2(b) where the same term is more narrowly defined.

The effect of subsection 38.1-381(c) is to exclude from the uninsured motorist coverage the damages caused by the negligence of the operator of the motor vehicle of a self-insured for the reason that the owner of such vehicle has been certified "to be possessed of financial ability to respond to a judgment * * * " (Code § 46.1-395(b)) for personal injury or property damage arising out of the ownership, use or operation of such vehicle (Code § 46.1-389(c)).

It is obvious that an insurance company writing motor vehicle liability insurance, and not a self-insurer under the provisions of Code § 46.1-395, is the only party required to discharge the obligations under the mandatory uninsured motorist endorsement in an insurance policy.

As pointed out the uninsured motorist fund, as created by payment of the statutory fees by uninsured motorists, is to be distributed among "insurance companies" writing "policies of insurance" within the state. See §§ 12-65 through 12-67, Virginia Code 1950 as amended. This plan imposes upon the uninsured motorist a greater portion of the burden of the costs of adding the uninsured motorist endorsement to the policies of motorists who have obtained liability insurance.

There is no provision in the Code of Virginia which allows a self-insurer to participate in the proceeds of the uninsured motorist fund. It would be highly inequitable to hold that a self-insurer must provide uninsured motorist coverage for its drivers when it has no right to share in the fund accumulated to defray the costs of providing such coverage.

In an article written by Collins Denny, III, entitled "Uninsured Motorist Coverage in Virginia", 47 Va. Law Rev., page 45 (January 1961) it is said:

"A guest in a motor vehicle is not always protected from injuries caused by an uninsured motorist even though that vehicle is insured within the meaning of § 46.1-167.2(b), defining insured motor vehicles for the purpose of determining registration fees, or even though there is proof of financial responsibility with respect to the driver as provided in § 46.1-468. Only in a vehicle which is or should be insured as required by § 38.1-381(b) is the guest protected unless he has independent uninsured motorist coverage applicable to him.

"The burden of guaranteeing recovery for the liability of uninsured motorists is placed only upon insurance companies. See Va. Code Ann. §§ 38.1-381 (a), (b) (Supp. 1960). Thus, the guest in the vehicle of a self-insurer, or in a vehicle as to which there is a bond or deposit of cash or securities, cannot look to the self-insurer or to the bond or deposits when injured by the negligence of an uninsured motorist."

To the same effect see "The South Carolina Uninsured Motorist Law" 15 S.C. L. Rev. 739, footnote 3 (discussing a law modeled after the Virginia law) where it is said:

"A self-insurer would seem to be excluded from providing uninsured motorist coverage on its motor vehicles. The act requires that 'no policy or contract' of liability insurance shall be issued in the State unless it contains the uninsured motorist endorsement. Section 46.750.11(1). It is obvious that a self-insurer does not issue liability

insurance policies and there is no specific requirement that it provide the uninsured motorist endorsement * * * ".

The term self-insurer does not appear in those sections of the uninsured motorist law which require coverage for damages caused by the negligence of an uninsured motorist. This law refers to insurance companies and only to insurance companies. Our obligation is to construe the statutes as written and not to enter the realm of legislation by either adding to or subtracting from them.

For the reasons expressed the judgment is reversed and final judgment is here entered for the cab company.

*Reversed and final judgment.*