161 N.J. Super. 453 (1978)
391 A.2d 1240
TRANSPORT OF NEW JERSEY, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CARLOS WATLER, DEFENDANT, AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1978.
Supplemental Briefs March 2, 1978.
Decided August 2, 1978.
*456 Before Judges FRITZ, BOTTER and ARD.
Mr. H. Hurlburt Tomlin argued the cause for appellant (Messrs. Tomlin and Tomlin, attorneys).
Mr. John R. Gercke argued the cause for respondent (Messrs. Schuenemann, Gercke & Picknally, attorneys).
The opinion of the court was delivered by BOTTER, J.A.D.
The Unsatisfied Claim and Judgment Fund Board (the Board) appeals from an order to pay $2,063.30 from the Fund on account of a judgment[1] entered against defendant Watler for property damage inflicted upon plaintiff's bus in a collision with defendant's apparently[2] uninsured motor vehicle. Because plaintiff is a self-insurer, appellant contends that plaintiff is not a "qualified person," as defined in N.J.S.A. 39:6-62 of the "UCJF Law" (N.J.S.A. 39:6-61 et seq.), and, therefore, is not entitled to compensation for damage caused by an uninsured motorist. Only a "qualified person" may claim indemnification from *457 the Fund. N.J.S.A. 39:6-69. N.J.S.A. 39:6-62 excludes from the definition of "qualified person" anyone who is an insured under an insurance policy providing uninsured motorist (UM) protection  that is to say, insurance against bodily injury or property damage caused by an uninsured motorist, in a form authorized by N.J.S.A. 17:28-1 et seq., "or in a form substantially similar thereto."
An owner or operator of autobusses may qualify as a self-insurer authorized to "carry its own liability insurance." N.J.S.A. 48:4-12. (See also, N.J.S.A. 39:6-52 authorizing any registered owner of more than 25 motor vehicles to become a self-insurer.) The question is whether Transport, as a self-insurer, is deemed to insure itself against damage caused by an uninsured motorist and is thereby precluded from asserting a claim against the Fund.
Although not essential to the disposition of that case, we previously held in Public Service Coord. Transport v. Marlo Trucking Co., Inc., 108 N.J. Super. 232, 238 (App. Div. 1970), that a self-insurer is not disqualified by the terms of N.J.S.A. 39:6-70(l) from making claim against the Fund for property damage. The opinion in that case did not refer to N.J.S.A. 17:28-1.1, since the claim arose out of an accident which predated the adoption of that law. The case also predated the adoption of compulsory motor vehicle liability insurance laws in this State. For reasons stated below we reach a different result in the case at hand.
N.J.S.A. 39:6B-1, enacted by L. 1972, c. 197, requires every owner of a motor vehicle registered or principally garaged in New Jersey to "maintain motor vehicle liability insurance coverage" insuring against liability for bodily injury, death and property damage in specific amounts. Another statute, N.J.S.A. 17:28-1.1, requires that liability policies covering New Jersey vehicles contain UM coverage. In our judgment these statutes express the legislative intent that all New Jersey motor vehicles, covered by commercial insurance or self-insured, must be insured against injury or damage caused by uninsured motorists.
*458 In its present form the relevant portions of N.J.S.A. 17:28-1.1 are as follows:
No automobile liability policy * * * of insurance insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued in this State with respect to any motor vehicle registered or principally garaged in this State unless it includes coverage, in limits for bodily injury or death as follows:

* * * * * * * *
under provisions approved by the Commissioner of Insurance, for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile, or hit and run automobile as defined in [N.J.S.A. 39:6-78], because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured or hit and run automobile anywhere within the United States or Canada. All such automobile liability policies shall also include coverage * * * [for property damage caused by the] owners or operators of uninsured automobiles, other than hit and run automobiles * * * subject * * * to an exclusion of the first $100.00 of such damages.
Appellant contends that every motor vehicle registered or principally garaged in New Jersey must carry UM coverage pursuant to N.J.S.A. 17:28-1.1, citing Iavicoli, No Fault and Comparative Negligence in New Jersey, § 44 at 100 (1973). On the other hand, respondent contends that N.J.S.A. 17:28-1.1 applies only to private passenger automobiles and not to commercial vehicles. Respondent reasons that the only other statute which requires motor vehicles to carry UM coverage is N.J.S.A. 39:6A-14 of the "no fault" law. Since that law applies only to private, passenger automobiles (see definition of "automobile" in N.J.S.A. 39:6A-2(a)), and N.J.S.A. 17:28-1.1 refers to "automobile liability" insurance, respondent contends that only automobile owners as defined in N.J.S.A. 39:6A-2(a) must carry UM coverage.
*459 We disagree. The provisions of the "no fault" law do not govern the interpretation of N.J.S.A. 17:28-1.1. In its original form N.J.S.A. 17:28-1.1 required insurance companies to offer uninsured motorist coverage in liability policies issued to New Jersey motorists. This law was enacted in 1968, effective January 2, 1969. L. 1968, c. 385, § 2. It was in effect four years before the no-fault law became fully operative. L. 1972, c. 70, § 19. Thus, the term "automobile liability policy" (emphasis supplied) in N.J.S.A. 17:28-1.1 did not take its meaning from the definition of "automobile" in N.J.S.A. 39:6A-2(a).
It is readily seen that N.J.S.A. 17:28-1.1 as originally enacted was ambiguous in scope. Its language permitted two interpretations: that it required an offer of UM coverage in liability policies issued for automobiles only or for all motor vehicles registered or principally garaged in New Jersey. The first sentence of N.J.S.A. 17:28-1.1 uses the term "automobile" policies at the outset. Soon thereafter the sentence uses language denoting that the policies involved are those that cover "any motor vehicle registered or principally garaged in this State."
There is nothing in the purpose of N.J.S.A. 17:28-1.1 that would limit its application to passenger automobiles as distinguished from other motor vehicles. One purpose of the law was to prevent the drain on the Fund caused by claims against uninsured motorists. See Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 284-285 (1974). The Fund's huge deficit was the principal focus of the public hearing held on March 4, 1968 by Committees on Banking and Insurance of the Senate and Assembly on Assembly Bill 111, and Senate Bill 481 [hereinafter referred to as "public hearing"]. (Senate Bill 381, as amended, became L. 1968, c. 385, N.J.S.A. 17:28-1.1.) Shifting claims from the Fund to private insurance coverage for injury and damage caused by uninsured motorists was the principal effect of N.J.S.A. 17:28-1.1. Thus, the Legislature had no reason to limit UM coverage to private passenger automobiles. The *460 discussion at the public hearing shows no such intention. Although coverage in sample automobile policies issued in other states was considered, the focus was upon all motor vehicles registered in New Jersey. Senate Bill 481 was described by one witness, the assistant general counsel of the American Insurance Association, as requiring "all liability insurance policies in the State to include uninsured motorist coverage." Public Hearing, at 50. The effect of N.J.S.A. 17:28-1.1 was to divert from the Fund to private insurance coverage claims of all insured motorists and persons who are also deemed insured under the UM provisions of a policy, such as passengers and certain members of the named insured's family. See id. at 51. Thus, claims against the Fund would be reduced primarily to those of pedestrians who are not owners of insured motor vehicles and passengers in uninsured vehicles who are not otherwise disqualified. See N.J.S.A. 39:6-70(c) and (d).
Another indication of the legislative intent behind N.J.S.A. 17:28-1.1 is its express tie-in with the UCJF Law. Although carelessly referring to motor vehicles and automobiles without sensible distinction between these terms, § 2 of L. 1968, c. 385 incorporates by reference the definition of a hit-and-run "motor vehicle" contained in N.J.S.A. 39:6-78, while speaking of a hit-and-run "automobile." We can conceive of no reason why the Legislature would require UM protection against hit-and-run automobiles and not all hit-and-run motor vehicles as defined in N.J.S.A. 39:6-78 of the UCJF Law. In our view the term "hit and run automobile" used in N.J.S.A. 17:28-1.1 was intended to have the same meaning as a hit-and-run motor vehicle described in N.J.S.A. 39:6-78, just as N.J.S.A. 17:28-1.1 speaks first of automobile liability policies and later of such policies covering any motor vehicle registered or garaged in New Jersey without apparent distinction.
Another example is the amendment of the definition of a "qualified person," contained in N.J.S.A. 39:6-62, which was effectuated by L. 1968, c. 385, § 4. The purpose of this *461 amendment was to exclude for the first time from the definition of "qualified person" those who had recourse to UM coverage. The disqualification would logically apply to every person who is actually protected by UM coverage in the liability policy of any motor vehicle. There was no reason to limit the disqualification to those who would be covered by UM provisions of commercial automobile policies only. Surely the Legislature could not have intended to allow claims against the Fund by some but not others in this category of insured individuals. Regardless of the definition of "qualified person" in N.J.S.A. 39:6-62, the provisions of N.J.S.A. 39:6-70(l) would bar the claim of all persons covered by the UM provisions of any motor vehicle insurance policy.[3]
The subsequent legislative history makes it quite clear that N.J.S.A. 17:28-1.1 was intended to require UM coverage in all insurance policies written for all motor vehicles registered or principally garaged in New Jersey. In 1972 the "no fault" law was enacted making it compulsory for all private passenger automobiles to carry liability insurance. N.J.S.A. 39:6A-3. L. 1972, c. 70, § 3, as amended by L. 1972, c. 203, § 2. Section 14 of L. 1972, c. 70 (N.J.S.A. 39:6A-14) provided that every owner of an "automobile" registered or principally garaged in New Jersey must carry UM coverage "as provided in P.L. 1968, c. 385 (C. 17:28-1.1)." The "no fault" law was amended in various respects later in 1972 by L. 1972, c. 203. L. 1972, c. 204, approved the same day as L. 1972, c. 203, amended N.J.S.A. 17:28-1.1. It changed the requirement of an offer of UM coverage to a compulsory requirement of UM coverage in liability policies. Since § 14 of the "no fault" law made UM coverage compulsory in all "automobile" policies as defined in N.J.S.A. 39:6A-2(a), the amendment *462 of N.J.S.A. 17:28-1.1 would have served no purpose if N.J.S.A. 17:28-1.1 applied to "automobile" liability policies only. In that event, N.J.S.A. 39:6A-14 would have superseded N.J.S.A. 17:28-1.1. What was significant in the amendment of N.J.S.A. 17:28-1.1 after the adoption of the "no fault" law was its application to all motor vehicles registered or principally garaged in New Jersey. As previously shown, N.J.S.A. 39:6B-1, enacted by L. 1972, c. 197, § 1, effective January 1, 1973, required that all motor vehicles registered or principally garaged in New Jersey carry liability insurance in specific limits. N.J.S.A. 17:28-1.1 as amended now made UM coverage mandatory for all such liability policies, not simply those within the reach of N.J.S.A. 39:6A-14. That this was the purpose, however ambiguously phrased in the law itself, is made clear by the Statement on Assembly Bill 1475 which became L. 1972, c. 204 (N.J.S.A. 17:28-1.1 as amended). That bill had appended thereto the following:

STATEMENT
The "New Jersey Automobile Reparation Reform Act," P.L. 1972, c. 70, required all automobile owners and registrants to have in effect insurance coverage to protect them and their property against the negligent acts of uninsured motorists. This bill extends that concept to all motor vehicles.
This bill also provides for an increase in the limits of coverage to conform with the minimum limits of liability coverage which is now compulsory for automobiles pursuant to chapter 70 of the laws of 1972 and which will be extended to all motor vehicles upon the enactment of Assembly Bill No. 802. This change is also consistent with the increase in the limits of liability which will be able to be obtained from the "Unsatisfied Claim and Judgment Fund" upon the enactment of Assembly Bill No. 803.
If all motor vehicles registered or principally garaged in New Jersey must carry UM insurance protection, does a lesser obligation apply to self-insured vehicles? We think not.
There is very little in the statutes and administrative regulations that spells out the kind of "liability insurance" *463 (N.J.S.A. 48:4-12) that a self-insured bus operator must carry.[4] See N.J.A.C. 17:4-2.1 and 2.2. Cf. N.J.S.A. 39:6-52. A self-insurer is given special status because it possesses assets that make it likely to respond to claims and judgments without the need to buy insurance from third parties. See N.J.S.A. 48:4-12; N.J.S.A. 48:4-46(b) and (e); N.J.S.A. 39:6-52; Guercio v. Hertz Corporation, 40 N.Y.2d 680, 684, 389 N.Y.S.2d 568, 571-572, 358 N.E.2d 261, 264-265 (Ct. App. 1976). Although self-insurers do not issue insurance policies to themselves, cf. id., N.J.S.A. 48:4-12 literally authorizes owners and operators of busses to "carry its own liability insurance." The immediate issue is whether that "insurance" is deemed to embrace coverage for losses caused by uninsured motorists. N.J.S.A. 17:28-1.1, according to our view, requires that all motor vehicles registered in New Jersey, including those owned by self-insurers, carry UM coverage as part of liability insurance.[5] Self-insurers such as Transport should be *464 expected to cover at least the same risks that other motorists are required by law to cover. See Comorote v. Massey, 110 N.J. Super. 124 (Law Div. 1970). For Transport to make claim against the Fund for property damage caused by an uninsured motorist when all other New Jersey motorists are required to provide their own coverage for such damage clearly violates the intent of N.J.S.A. 17:28-1.1, N.J.S.A. 39:6-62, N.J.S.A. 39:6-70 and N.J.S.A. 39:6-71.
The scheme of the UCJF Law requires exhaustion of alternate sources of payment for losses caused by an uninsured motorist. See id.; Wormack v. Howard, 33 N.J. 139, 145 (1960). Specifically excluded from seeking payment from the Fund is "any insurer by reason of the existence of a policy of insurance, whereby the insurer is liable to pay, in whole or in part, the amount of the judgment * * *." N.J.S.A. 39:6-70(l). The same subsection also provides that no payment from the Fund will be made in lieu of payments due under such an insurance policy or as reimbursement to an insurer for moneys paid or payable under such a policy.
Transport is an insurer  a self-insurer  although not literally within the definition of "insurer" contained in N.J.S.A. 39:6-62. Concededly, Transport does not issue an insurance policy as such. Cases in other states have held that UM coverage is a requirement of insurance policies only, and self-insurers, who do not issue "insurance policies," need not furnish UM coverage. Mountain States Tel. & Tel. Co. v. Aetna Cas. and Sur. Co., 116 Ariz. 225, 227, 568 P.2d 1123, 1125 (Ct. App. 1977); Johnson v. Yellow Cab Co. of Phila., 456 Pa. 256, 258, 317 A.2d 245, 247 (Sup. Ct. 1974); Yellow Cab Co. of Va. v. Adinolfi, 204 Va. 815, 819-820, 134 S.E.2d 308, 311-312 (Sup. Ct. App. 1964); cf. Shelton v. American Re-Ins. Co., 210 Va. 655, 658, 173 S.E.2d 820, 823 (Sup. Ct. App. 1970); but cf. Johns v. Liberty Mut. Fire Ins. Co., supra, n. 5. However, giving effect to the purposes of N.J.S.A. 17:28-1.1, requiring UM coverage for all motor vehicles registered in New Jersey, and to the *465 general exclusion under N.J.S.A. 39:6-62 and N.J.S.A. 39:6-70(l) of claimants having recourse to insurance coverage, we conclude that Transport's claim against the Fund must be rejected. See Yellow Cab Co. of Va. v. Adinolfi, supra, holding, in part, that because a self-insurer cannot participate in the uninsured motorist fund it is not required to carry UM coverage; Motor Vehicle Acc. Indemn. Corp. v. Queens Transit Corp., 80 Misc.2d 669, 363 N.Y.S.2d 490 (Sup. Ct. 1975), holding a self-insurer disqualified as an "insurer" from making claim to recover sums paid to its bus passengers caused by the negligence of an uninsured motorist.
Allowing certain motor vehicle owners to be self-insurers excuses them from paying insurance premiums, but does not entitle them to benefits from the Fund which other insured motorists cannot receive. Of importance, but not decided here, is the question whether self-insurers are liable to their passengers for injuries caused solely by the negligence of uninsured motorists. See Motor Vehicle Acc. Indemn. Corp. v. Queens Transit Corp., supra; Shelton v. American Re-Ins. Co., supra. Undoubtedly, the incidence of such liability has been drastically reduced by the adoption of compulsory insurance laws, and this is reflected in the relatively low cost of UM coverage.[6] We recognize that this opinion casts its shadow upon that issue, although it is not directly presented in this case. We hold simply that Transport may not receive payment from the Fund for the judgment Transport holds against an uninsured motorist for damage to Transport's bus.
There are other issues in the case which should be mentioned briefly. Defendant was in military service and was *466 stationed in New Jersey when the action was commenced. He was not served personally; instead, the summons and complaint were left with the base commander. (After oral argument counsel filed additional briefs addressing the issue of the validity of service of process upon defendant.) In addition, the petition for payment from the Fund recited that an insurance company had disclaimed under a policy previously issued to defendant. Despite these circumstances counsel assigned pursuant to N.J.S.A. 39:6-67 consented to the entry of judgment against defendant for $2,163.60.
Our examination of the record persuades us that service upon defendant did not comply with the rules of court, and, lacking jurisdiction, the judgment against defendant must be vacated. R. 6:2-3(b) calls for service within the State in accordance with R. 4:4-4(a), (b) or (c), as applicable, or otherwise as provided by court order consistent with due process of law (and in other ways not pertinent to this case). No court order for substitute service was entered and, therefore, the rule of Feuchtbaum v. Constantini, 59 N.J. 167, 181 (1971), on which plaintiff relies, cannot be invoked at this stage of the proceeding. Moreover, we deny Transport's request that an order for substituted service should now be entered nunc pro tunc to cure the jurisdictional defect.
We note also that counsel assigned pursuant to N.J.S.A. 39:6-67 (see also N.J.S.A. 39:6-66 providing for investigation and defense of a claim against an uninsured motorist) appeared on behalf of defendant. However, the UCJF Law does not authorize assigned counsel to consent to the entry of a judgment against a defendant without his assent, his written undertaking to repay the State Treasurer, as custodian of the Fund, and his confession of judgment. N.J.S.A. 39:6-72(a)(3) and (7) and (b)(3).
We suggest no intentional wrongdoing here. When a defendant has defaulted and his cooperation cannot be obtained, the purpose of the UCJF Law can be fulfilled by the entry of a default judgment, without consent of assigned *467 counsel on defendant's behalf, but with his consent insofar as the Board's interest is concerned. In such a case the ordinary rules for entry of a default judgment should be followed. R. 6:6-3(c); see R. 4:43-2. Thus, the trial judge in his discretion should determine what form of proof as to liability and damages is appropriate in the interest of justice. See Douglas v. Harris, 35 N.J. 270, 276-280 (1961).
This brings us to defendant's military status. The record suggests that defendant was overseas when the matter was brought before the trial court. We cannot say on the record before us whether there was a basis for Watler or Transport to contest the insurance company's disclaimer of liability and whether that disclaimer should have been litigated. N.J.S.A. 39:6-70(f); Public Service Coord. Transport v. Marlo Trucking Co., supra, 108 N.J. Super. at 235. Not all disclaimers are valid. See Cooper v. Government Employees Ins. Co., 51 N.J. 86 (1968). In these circumstances, because of defendant's military status, the trial judge should have considered his discretionary right to stay the proceedings pursuant to 50 U.S.C.A. App. § 521 and N.J.S.A. 38:23A-42.
For the reasons mentioned, we reverse and set aside the order for payment from the Fund. We vacate the judgment against defendant for lack of jurisdiction and for the invalidity of assigned counsel's consent to its entry without compliance with N.J.S.A. 39:6-72. Transport still has the right to proceed against Watler and has asked for the opportunity to serve him personally or by authorized substituted service should the prior service of process be invalidated. Therefore, we remand the case to the trial court for such further proceedings as are appropriate.
NOTES
[1] The order was for $2,063.30, although it appears that the judgment was for $2,163.60. The difference appears to be due to a typographical error after applying the statutory deduction of $100. N.J.S.A. 39:6-73(d).
[2] The petition for payment from the Fund recites that an insurance company disclaimed coverage under "a policy previously issued to defendant." The Board did not raise the issue of insurance coverage in defense of the order to pay.
[3] N.J.S.A. 39:6-70(l) bars claims by or on behalf of insurers as well as claims by insureds in lieu of their making claim under a policy covering the loss caused by an uninsured motorist.
[4] A letter from the Department of Insurance was submitted by appellant to the trial court. The letter refers to a case involving a different New Jersey self-insurer making a claim against the Fund. It states:

A self-insured entity has to provide the same mandatory coverages that would be provided if coverage was obtained from the insurance market.
This letter was referred to in oral argument below, without objection, and is contained in appellant's appendix in this court. However, this general statement is not very helpful to the case at hand and we do not rely upon it in reaching our decision.
[5] Bus operators are required to carry liability insurance with prescribed limits unless they are self-insurers. N.J.S.A. 48:4-36, 37, 47 and 48. N.J.S.A. 17:28-1.1 is a specific law dealing with uninsured motorist coverage which is not in conflict with the provisions of Title 48 and imposes additional insurance obligations upon all motorists including bus owners and operators. Cf. Johns v. Liberty Mutual Fire Ins. Co., 337 So. 2d 830, 831 (Fla. D. Ct. App. 1976), cert. den. 348 So.2d 949 (Fla. Sup. Ct. 1977), stating that government-owned vehicles are not exempt from statutory UM requirements although they are exempt from the Financial Responsibility Law.
[6] In 1968, at the public hearing on the bill that became N.J.S.A. 17:28-1.1, a witness stated that in other states the annual premium for uninsured motorist coverage varied from $2 to $7 depending upon the number of uninsured motorists. Public Hearing, supra, at 66: see also Stanton, "Protection Against Uninsured Motorists in New Jersey," 3 Seton Hall L. Rev. 19, 23 (1971), stating that the annual cost per vehicle is $5. Cf. Note, 30 Rutgers L. Rev. 909, 961-962 n. 297 (1977).