MICHAEL CHRISTY, PLAINTIFF-RESPONDENT, v. CITY OF NEWARK, DEFENDANT-APPELLANT, AND STATE FARM INSURANCE COMPANY, DEFENDANT.

Argued September 24, 1984—Decided June 11, 1986.

*Michael Dougherty*, Asst. Corp. Counsel, argued the cause for appellant (*John J. Teare*, Corporation Counsel, attorney).

*Richard H. Wildstein,* argued the cause for respondent Michael Christy (*Goldstein, Ballen, O'Rourke & Wildstein,* attorneys).

*Anthony J. Marinello* argued the cause for defendant State Farm Insurance Company (*Soriano, Henkel, Stein & Gaydos,* attorneys).

PER CURIAM.

Rather than obtain from an insurance company a liability insurance policy covering its motor vehicles, defendant City of Newark established an insurance fund under *N.J.S.A.* 40A:10–6.[1] The Appellate Division determined that under that statutory funding arrangement, the City is obligated to furnish uninsured motorist benefits to plaintiff, a Newark police officer. We granted certification, 96 *N.J.* 262 (1984), to review that determination, and now affirm.

I

Plaintiff, Michael Christy, was injured when a "hit-and-run" vehicle struck a police car that he was operating in the course of his duties. Plaintiff was an insured within the meaning of the uninsured motorist (UM) endorsement of his own automobile insurance policy issued by defendant State Farm Insurance Company (State Farm). He was also entitled to, and eventually obtained, benefits pursuant to the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –127. In addition, plaintiff sought UM protection from the City under its insurance fund, created by

---

[1] Although the "insurance fund" statute that we are asked to construe, *N.J.S.A.* 40A:10–6, did not become effective until eleven months after plaintiff's accident, see *L.*1979, *c.* 230, ¶ 1 (effective Oct. 15, 1979), neither the parties nor the courts below have adverted to that circumstance. At every level, including this Court, the case has been approached as if *N.J.S.A.* 40A:10–6 applied. Because the statute's meaning and effect present an important issue that is likely to be raised in future cases, we are content to assume the applicability of the statute, particularly inasmuch as the result in this case would be the same even under the predecessor statute, *N.J.S.A.* 40:51–3. See *infra* at 608.

the municipality under the authority of *N.J.S.A.* 40A:10–6. That enactment reads in full as follows:

> The governing body of any local unit may establish an insurance fund for the following purposes:.
>
> a. To insure against any loss or damage however caused to any property, motor vehicles, equipment or apparatus owned by it, or owned by or under the control of any of its departments, boards, agencies or commissions;
>
> b. To insure against liability resulting from the use or operation of motor vehicles, equipment or apparatus owned by or controlled by it, or owned by or under the control of any of its departments, boards, agencies or commissions;
>
> c. To insure against liability for its negligence and that of its officers, employees and servants, whether or not compensated or part-time, who are authorized to perform any act or services, but not including an independent contractor within the limitations of the "New Jersey Tort Claims Act" (*N.J.S.A.* 59:1–1 *et seq.*).
>
> The governing body may appropriate the moneys necessary for the purposes of this section.

Our focus here is on subsection b., the provision for "insur[ance] against liability resulting from the use or operation of motor vehicles, equipment or apparatus" owned by the municipality.

Because the City rejected the claim for UM coverage, plaintiff made demand for arbitration. In a letter of November 17, 1981, the City declared its refusal to participate in arbitration proceedings because it was "not a party to any arbitration agreements." It further took the position that plaintiff's claim was "clearly barred by the provisions of the New Jersey Tort Claims Act," *N.J.S.A.* 59:1–1 to :12–3.

Despite the City's declared position, plaintiff's claims for UM benefits went to arbitration against both State Farm, plaintiff's own carrier, and Newark. As it had indicated it would, the City refused to participate in the arbitration proceedings, but it did nothing to protect its position in respect of the issue of arbitrability. *See In re Grover*, 80 *N.J.* 221, 230 (1979) (insurer could have instituted action for judicial decision on arbitrability issue and requested that arbitration be stayed, or could have objected to propriety of arbitration as to it and participated in arbitration proceedings on issues of plaintiff's damages and liability of "hit-and-run" driver). The arbitrator found liability on the part

of the hit-and-run driver and fixed plaintiff's damages at $26,-500. He specifically refused to decide which source of UM benefits, the City or State Farm, was primary and which was secondary, inasmuch as the question was "not within the jurisdiction of the Arbitrator to decide."

Plaintiff then started this suit in the Law Division, seeking to apportion between State Farm and the City the gross award resulting from arbitration, and to compel Newark to pay its share of UM benefits. As to the City, plaintiff's complaint alleged, without reference to any statutory provision or other source, that the City was "[a]t the time of the accident * * * a self-insurer of its vehicles," and was therefore "required to provide all benefits set forth in law including Uninsured Motorists Protection Benefits * * *." The City's answer set up separate defenses under the New Jersey Tort Claims Act, the Workers' Compensation Act, the Motor Vehicle Security-Responsibility Law (*N.J.S.A.* 39:6–23 to –91), and, significantly for our purposes, *N.J.S.A.* 40A:10–6.

The City and plaintiff both moved for summary judgment. The trial court denied plaintiff's motion against Newark and granted the City's motion; the court entered judgment in favor of plaintiff against State Farm for $11,500, "subject to workers' compensation lien, if any." The court concluded that the City was under no obligation to provide UM coverage for its employees. It thus limited plaintiff's remedy to his workers' compensation claim and his UM coverage with State Farm.

On plaintiff's appeal to the Appellate Division he claimed that Newark was required to furnish UM protection under *N.J.S.A.* 39:6A–14, which requires "[e]very owner or registrant of an automobile registered or principally garaged in this State [to] maintain uninsured motorist coverage" as provided by *N.J.S.A.* 17:28–1.1. Plaintiff argued in addition that the City was "certainly a self-insured pursuant to *N.J.S.A.* 40A:10–6," the "insurance fund" provision. The City insisted in its Appellate Division brief that it is "not a self-insurer under *N.J.S.A.* 39:6–52

[part of the Motor Vehicle Security-Responsibility Law, *N.J. S.A.* 39:6–23 to –91], but rather provides insurance against liability for negligence pursuant to the authority granted in *N.J.S.A.* 40A:10–6, which * * * does not mandate uninsured motorist coverage under the facts of this case."

The Appellate Division reversed the summary judgment in favor of the City. It determined that *N.J.S.A.* 40A:10–6(b), which authorizes the creation of an insurance fund to insure against liability resulting from the use or operation of motor vehicles, equipment, or apparatus owned or controlled by the municipality, must be read to include UM protection within its purposes. The court below reached this conclusion by contrasting subsection b. with *N.J.S.A.* 40A:10–6(c), which has as its purpose the insuring of the municipality against liability for *its* negligence and that of its officers, employees or servants. The Appellate Division reasoned that because subsection b. imposes liability on the municipality arising out of the use or operation of its motor vehicles but makes no mention of negligence, that subsection must be deemed to include UM protection, for it would otherwise be superfluous in view of subsection c.'s provision for liability arising from negligence, there being no other source for the imposition of liability against the municipality. The court below observed in passing that a liberal construction of *N.J.S.A.* 40A:10–6 is warranted in order to afford UM protection not just to a police officer, as in this case, but as well to civilian passengers, who frequently are carried by police cars in emergency situations.

The Appellate Division then dealt with Newark's position under the Motor Vehicle Security-Responsibility Law, *N.J.S.A.* 39:6–23 to –91. One section of that Law, *N.J.S.A.* 39:6–52, provides that any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance after satisfying the Director of the Division of Motor Vehicles of his ability to pay judgments. Another section, *N.J.S.A.* 39:6–54, declares that the Law "shall not apply with respect to any motor vehicle

owned by * * * any political subdivision of this State or any municipality therein * * *." Although Newark acknowledged below that our courts have held that a certificate of self-insurance obtained pursuant to *N.J.S.A.* 39:6–52 is equivalent to a "policy" that incorporates the UM coverage mandated of all insurance policies by *N.J.S.A.* 17:28–1.1, see *Transport of New Jersey v. Watler*, 161 *N.J.Super.* 453 (App.Div.1978), aff'd as modified, 79 *N.J.* 400 (1979); *Mortimer v. Peterkin*, 170 *N.J.Super.* 598 (App.Div.1979), the City argued that it was exempt from the provisions of that law by virtue of *N.J.S.A.* 39:6–54. The Appellate Division rejected that contention because inasmuch as the statute under which Newark claimed to have become an insurer, *N.J.S.A.* 40A:10–6, is not part of the Motor Vehicle Security-Responsibility Law, the exemption did not attach.

The court below also refused to credit the municipality's claim that the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3, served to limit its liability, because the court considered plaintiff's claim to be for UM benefits rather than one in tort.

Finally, the Appellate Division viewed as without merit Newark's claim that its police car was not an "automobile" within the meaning of *N.J.S.A.* 39:6A–14, which requires "[e]very owner or registrant of an automobile registered or principally garaged in this State [to] maintain uninsured motorist coverage" as provided by *N.J.S.A.* 17:28–1.1. The City's argument was based on the definition of "automobile" found in *N.J.S.A.* 39:6A–2(a): "a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public livery or conveyance for passengers nor rented to others with a driver * * *." The Appellate Division concluded that the inclusion of the word "private" in the definition was for the purpose of distinguishing normal passenger-type cars from those used "as a public livery or conveyance of passengers" or "rented to others with a driver."

In its petition for certification the City contends that the Appellate Division erred (1) in construing *N.J.S.A.* 40A:10–6 to include an obligation to provide UM benefits, (2) in granting to plaintiff a source of recovery beyond that provided by the exclusive remedy of workers' compensation, and (3) in failing to recognize the limitations on the City's liability that are set forth in the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3.

## II

Reasoning by analogy to the situation in *Transport of New Jersey v. Watler, supra,* 161 *N.J.Super.* 453, aff'd as modified, 79 *N.J.* 400, the court below found in *N.J.S.A.* 40A:10–6(b) an obligation on the City to furnish UM benefits to plaintiff. The analogy is apt.

In *Transport of New Jersey* the question was whether plaintiff, a private self-insurer—there, a bus company—had to insure itself against damage caused by an uninsured motorist. If it had UM protection, the company would be disqualified from pressing a claim against the Unsatisfied Claim and Judgment Fund, see *N.J.S.A.* 39:6–61 to –91, for damages to its bus caused by a collision with defendant's uninsured motor vehicle. Only a "qualified person" may claim indemnification from the Fund, *N.J.S.A.* 39:6–69; and *N.J.S.A.* 39:6–62 excludes from the definition of a "qualified person" anyone who is an insured under an insurance policy providing UM coverage in a form authorized by *N.J.S.A.* 17:28–1.1 "or in a form substantially similar thereto." 161 *N.J.Super.* at 456–57, quoting *N.J.S.A.* 39:6–62.

Plaintiff in *Transport* had secured a certificate of self-insurance pursuant to *N.J.S.A.* 39:6–52 (see *supra* at 603–04) and *N.J.S.A.* 48:4–12 and –13, an Article of the Department of Public Utilities Act of 1948, *N.J.S.A.* 48:1–1 to :19–25, now the Department of Energy Act, *L.*1977, *c.* 146, codified at *N.J.S.A.* 52:27F–1 to –32. That Article, which confines its reach to autobuses, permits an autobus owner to "carry its own liability

insurance" after approval by the Commissioner of Insurance. The Appellate Division in *Transport* read *N.J.S.A.* 39:6B–1, which requires every motor vehicle owner to maintain motor vehicle liability insurance coverage in stated amounts, in conjunction with *N.J.S.A.* 17:28–1.1, which provides that automobile liability policies on any New Jersey motor vehicles must contain UM coverage. The court concluded that "these statutes express the legislative intent that all New Jersey motor vehicles, covered by commercial insurance or self-insured, must be insured against injury for damage caused by uninsured motorists." 161 *N.J.Super.* at 457.

The Appellate Division in *Transport* found no reason in either logic or the legislative history of the applicable statutes to impose on self-insured vehicles a lesser obligation than that assumed by those covered by a commercial insurance policy. Nor did it find any warrant for exempting commercial vehicles such as autobuses from the statutory obligation of *N.J.S.A.* 17:28–1.1 to provide UM coverage—a determination that the legislature thereafter made clear was in keeping with its intent by its amendments to *N.J.S.A.* 17:28–1.1 in *L.*1983, *c.* 362 (substituting "motor vehicle" for "automobile" throughout the statute). The court concluded that "[s]elf-insurers such as Transport should be expected to cover at least the same risks that other motorists are required by law to cover." *Id.* at 463–64.

The Appellate Division's holding in *Transport* was a limited one, however: "We hold simply that Transport may not receive payment from the Fund for the judgment Transport holds against an uninsured motorist for damage to Transport's bus." *Id.* at 465. Specifically left open was the question whether self-insurers are obligated to extend UM benefits to their passengers for injuries caused solely by the negligence of uninsured motorists, *id.*, an issue that courts later resolved in *Mortimer v. Peterkin, supra,* 170 *N.J.Super.* 598, and *Crocker v. Transport of New Jersey,* 169 *N.J.Super.* 498 (Law Div.

1979), by holding that passengers were entitled to UM coverage.

In affirming the Appellate Division judgment in *Transport* essentially for the reasons stated in Judge Botter's opinion, this Court added only the following comment:

> The certificate of self-insurance issued to TNJ pursuant to *N.J.S.A.* 39:6–52 is a "policy" under which TNJ is insured for purposes of *N.J.S.A.* 39:6–62. Incorporated within this "policy" of self-insurance is the uninsured motorist coverage required of all motor vehicle insurance policies by *N.J.S.A.* 17:28–1.1 [79 *N.J.* at 401.]

We have dwelt at such great length on *Transport of New Jersey v. Watler, supra,* 161 *N.J.Super.* 453, aff'd as modified, 79 *N.J.* 400, because it furnishes the springboard for resolution of the essential issue posed by this appeal: does the obligation under *N.J.S.A.* 17:28–1.1 to provide UM coverage in all insurance policies issued in this state, judicially declared in *Transport* to extend to private self-insurers created under *N.J.S.A.* 39:6–52, apply as well to a municipality such as the City of Newark, which established an insurance fund under *N.J.S.A.* 40A:10–6? The City's brief seeks to avoid the obvious weight of the *Transport* holding by distinguishing that case on the basis that in this case "there is neither a 'policy' nor a certificate of self-insurance equivalent to a policy for the court to * * * construe." In our view the proffered distinction—the absence here of a policy or certificate of insurance—elevates form over the substance of *Transport*'s holding.

The policy underlying *Transport*'s holding, so precisely explicated in Judge Botter's skillful weaving together of the various statutory provisions touching on the subject, is this: New Jersey requires that "all motor vehicles registered in New Jersey, including those owned by self-insurers, carry UM coverage as part of liability insurance." 161 *N.J.Super.* at 463. That policy does not depend for its vitality on a piece of paper, either an insurance policy as such or a certificate of self-insurance, and nothing in this Court's opinion in *Transport,* 79 *N.J.* 400, even hints that a certificate, there held to be the function-

al equivalent of an insurance policy, is a condition precedent to the imposition of UM coverage required by *N.J.S.A.* 17:28–1.1 of all motor vehicle insurance policies. See 79 *N.J.* at 401. This Court did not "construe" the certificate; indeed, we are nowhere informed as to how the certificate read. It is the *fact* of self-insurance, not the form in which or document by which it is evidenced, that results in UM coverage. When it created a fund under *N.J.S.A.* 40A:10–6, Newark effected a statutory contract, obligating itself to furnish the UM coverage mandated under *N.J.S.A.* 17:28–1.1 to the extent of at least the statutory minimum of $15,000. So strong is the public policy favoring UM coverage that in the absence of an unmistakable legislative declaration to the contrary, we are certain that the foregoing principle applies to any legislatively-authorized self-insurance fund, including one formed under the authority of the predecessor to *N.J.S.A.* 40A:10–6. See *supra* note 1.

To be sure, there are fundamental differences between the self-insurance schemes available to private entities, as contemplated by *N.J.S.A.* 39:6–52 and *N.J.S.A.* 48:4–12, and that provided for by *N.J.S.A.* 40A:10–6: the first require that the assets of the private self-insurer be at risk, and they call for the supervision of a regulator, whereas the second envisions a fund that depends on the public entity's taxing power and does not involve any "outside" regulator. But there is no difference between a private self-insurer, like the one in *Transport* and *Mortimer v. Peterkin, supra,* 170 *N.J.Super.* 598, and *Crocker v. Transport of New Jersey, supra,* 169 *N.J.Super.* 498, and a public self-insurer, like Newark, that would justify a difference in the coverages that the two types of self-insurers must furnish. The legislatively-declared public policy of this state strongly supports the construction that the court below gave to *N.J.S.A.* 40A:10–6.

## III

Newark contends that because plaintiff, its employee, has recovered workers' compensation benefits, he is barred by

*N.J.S.A.* 34:15–8 from obtaining any further relief from the City in the form of UM benefits. The enactment in question reads in pertinent part as follows:

> Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article * * *.
>
> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong. [*N.J.S.A.* 34:15–8.]

Newark's argument is that the UM benefits that plaintiff now seeks constitute an additional "method, form or amount of compensation" for his injuries that is disallowed by the statute.

The City misconstrues *N.J.S.A.* 34:15–8. Its purpose is to prohibit an employee from suing the employer in negligence once workers' compensation benefits have been awarded. *See Wellenheider v. Rader,* 49 *N.J.* 1, 9 (1967); *Dudley v. Victor Lynn Lines, Inc.,* 32 *N.J.* 479, 489 (1960). There is no prohibition, however, in respect of a suit against a third-party tortfeasor. Indeed, *N.J.S.A.* 34:15–40 expressly preserves the right to maintain such a suit. It reads:

> Where a third person is liable to the employee or his dependents for an injury or death, the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee or his dependents, nor be regarded as establishing a measure of damage therein. In the event that the employee or his dependents shall recover and be paid from the said third person or his insurance carrier, any sum in release or in judgment on account of his or its liability to the injured employee or his dependents, the liability of the employer under this statute thereupon shall be only such as is hereinafter in this section provided. [*N.J.S.A.* 34:15–40.]

The effect of the statutory scheme is to

> preserve to an injured workman his right of action against a third-party tortfeasor for an injury caused by the latter, while at the same time it prevents a workman from recovering twice for the same industrial injury.
>
> [*Brum v. International Terminal Operating Co.,* 125 *N.J.Super.* 558, 561 (App.Div.1973).]

Moreover, *N.J.S.A.* 34:15–40 operates to give the employer a credit or reimbursement for damages paid by a third-party tortfeasor to the employee. That UM benefits fall into the

same category in this respect as payments by a tortfeasor—a proposition established in *Montedoro v. City of Asbury Park*, 174 *N.J.Super.* 305 (App.Div.1980)—has now been put beyond doubt by our decision in *Midland Ins. Co. v. Colatrella*, 102 *N.J.* 612 (1986). Under *Colatrella* the City is entitled to a lien on any UM benefits payable to plaintiff.

### IV

■ Finally, Newark contends that the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3, immunizes the City against claims for UM benefits allegedly due because of the negligence of a third-party uninsured motorist. The provision on which Newark relies declares that

[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [*N.J.S.A.* 59:2–1(a).]

The quoted language is couched in terms of tort liability. The Appellate Division refused to characterize a claim for UM benefits as "one in which a claim for tort has been asserted against the City." We agree. The claim is one arising out of contract—here, a statutory contract founded in *N.J.S.A.* 40A:10–6—to establish an insurance fund that included, as we have held, the obligation to furnish UM benefits. See *supra* at 608.

### V

We affirm the judgment of the Appellate Division, which in turn reversed the summary judgment in favor of the City. The cause is remanded to the trial court for further proceedings consistent with this opinion.

■ Those proceedings are directed to an apportionment of the arbitrator's award of $26,500. Because this case arose before January 1, 1984, the effective date of the so-called "anti-stacking" legislation, *L.*1983, *c.* 362, § 2(c), codified in *N.J.S.A.* 17:28–1.1(c), plaintiff can resort to the UM coverages

of both State Farm and the City, under *Motor Club of Am. Ins. Co. v. Phillips*, 66 *N.J.* 277 (1974). See our holding to that effect in *Mondelli v. State Farm Mut. Auto. Ins. Co.*, 102 *N.J.* 167, 173 (1986). As in *Mondelli*, the parties here have not explored the question of which coverage is primary and which is secondary, so that question too is left for resolution at the trial level.

What is not clear, however, is whether Newark is bound by the arbitrator's award—*not* because it did not participate in the arbitration proceedings, but because the basic statute that requires UM coverage, *N.J.S.A.* 17:28–1.1, now held to bind public self-insurers, does not itself compel arbitration. The statute mandates that UM coverage be furnished "with respect to any motor vehicle registered or principally garaged in this State * * * under provisions approved by the Commissioner of Insurance * * *." The first form of coverage against uninsured motorists approved by the Commissioner as of April 2, 1969, the effective date of the original version of *N.J.S.A.* 17:28–1.1, which had to be used by all insurers writing automobile policies in New Jersey, "states that the determination as to whether the insured is legally entitled to recover damages from an uninsured motorist, and, if so, the amount of the damages, shall be made by agreement between the insured and the company, or, if they fail to agree, by arbitration." See Stanton, "Protection Against Uninsured Motorists in New Jersey," 3 *Seton Hall L.Rev.* 19, 27 (1971). The record in this case does not enlighten us as to whether the Commissioner has approved other forms, nor has our research supplied the answer.

We have not hesitated to bind Newark to a statutory contract obliging it to furnish UM benefits in keeping with *N.J.S.A.* 17:28–1.1. Were we certain that the *only* form that the Commissioner has approved for the provision of UM benefits called for arbitration, we would again have no hesitancy in making arbitration a part of Newark's obligation. As well, there may be some regulation of the Commissioner that covers the subject, although none has been called to our attention.

These are questions that should be explored on the remand. On the state of this record we are reluctant to hazard a definitive answer in this opinion. Although the City's Appellate Division brief questioned the authority that would bind it to the arbitration result in this case, the point was not touched upon by the Appellate Division opinion, not adverted to in the petition for certification, and was dealt with in only the most cursory fashion at oral argument before this Court. We therefore leave it for full development in the trial court.

Affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*For reversal*—None.