LINDA ROSS, PLAINTIFF-APPELLANT, v. TRANSPORT OF NEW JERSEY, DEFENDANT-RESPONDENT, AND MICHAEL GUI-DO, JR., ALCIDES PEREZ AND RONALD LONGSON, JR., DE-FENDANTS.

Superior Court of New Jersey
Appellate Division

Argued May 27, 1987—Decided June 18, 1987.

Before Judges PRESSLER, GAULKIN and ASHBEY.

*Kenneth E. Walker, II,* argued the cause for appellant (*Freeman & Bass, P.A.,* attorneys).

*Madeleine W. Mansier,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

GAULKIN, J.A.D.

Plaintiff Linda Ross (Ross) brought this action to recover damages for personal injuries she suffered as a passenger in a bus owned and operated by defendant New Jersey Transit Bus Operations, Inc. (Transit)[1] which was struck by a stolen car driven by defendant Ronald Longson, Jr. At an arbitration hearing conducted pursuant to *N.J.S.A.* 39:6A–25 *et seq.,* the arbitrator determined that the accident was caused solely by Longson's negligence and awarded Ross the sum of $5555.

---

[1] Defendant was improperly impleaded as Transport of New Jersey, a private bus company which was purchased by New Jersey Transit Bus Operations, Inc., a public entity, on October 15, 1980, pursuant to the Public Transportation Act of 1979, *N.J.S.A.* 27:25–1 *et seq.* The accident for which Ross brought suit occurred on April 4, 1984.

Ross moved in the Law Division to confirm the award against Longson and, because Longson was concededly uninsured, to require that the award be paid by Transit. Judgment was entered against Longson, but the motion to compel Transit to pay was denied. Ross appeals from the denial of that motion.

The sole question presented by the appeal is whether Transit, as a public entity, is obligated to provide uninsured motorist (UM) coverage to its injured passengers. The issue has been addressed in only one reported decision, *Transport of New Jersey v. Matos,* 202 *N.J.Super.* 571 (Law Div.1985), which held that Transit was not so obligated.[2] We reach the contrary conclusion.

■ The framework of the dispute can be briefly stated. *N.J.S.A.* 39:6B–1 mandates that "[e]very owner or registered owner of a motor vehicle registered or principally garaged in this State shall maintain motor vehicle liability insurance coverage...." *N.J.S.A.* 17:28–1.la in turn provides that every motor vehicle liability policy shall include coverage "for payment of all or part of the sums which the insured ... shall be legally entitled to recover as damages from the operator or owner of an uninsured motor vehicle...." An owner of more than 25 motor vehicles may qualify as a self-insurer (*N.J.S.A.* 39:6–52(a), in which event his certificate of self-insurance is deemed an insurance policy which incorporates the UM coverage required of all motor vehicle insurance policies by *N.J.S.A.* 17:28–1.1. *Transport of New Jersey v. Watler,* 79 *N.J.* 400, 401 (1979). *See also Mortimer v. Peterkin,* 170 *N.J.Super.* 598 (App.Div.1979); *Crocker v. Transport of New Jersey,* 169 *N.J.*

2In *Travelers Ins. Co. v. Transport of N.J.,* 204 *N.J.Super.* 63, 65 (Ch.Div.1985), Transit acknowledged "that as a self-insured it is responsible for providing uninsured motorist (U.M.) coverage as mandated by *N.J.S.A.* 17:28–1.1." We draw no inferences from the apparent change in position here taken by Transit.

*Super.* 498 (Law Div.1979).[3]  Similarly, a municipality is deemed to provide UM coverage if it establishes an insurance fund under *N.J.S.A.* 40A:10–6b, "[t]o insure against liability resulting from the use or operation of motor vehicles, equipment or apparatus owned by or controlled by it. . . ." *Christy v. City of Newark,* 102 *N.J.* 598, 607–608 (1986).  The statutory obligation to provide UM coverage in insurance policies thus has been judicially declared to extend to private self-insurers and to municipalities which have established an insurance fund. The question here is whether that obligation extends as well to Transit, a self-insured public entity without any statutory insurance fund.[4]

The reasoning of the Supreme Court in *Christy* requires the conclusion that Transit must afford UM coverage to its passengers.  In *Christy,* the court rejected Newark's contention that UM coverage could only be predicated on an insurance policy or a certificate of self-insurance.  It found the various statutory provisions to establish a public policy that "all motor vehicles registered in New Jersey, including those owned by self-insurers, carry UM coverage as part of liability insurance."  102 *N.J.* at 607 (quoting *Transport of New Jersey v. Watler,* 161 *N.J.Super.* 453, 463 (App.Div.1978), aff'd as modified, 79 *N.J.* 400 (1979)).  That policy "does not depend for its vitality on a piece of paper, either an insurance policy as such or a certificate of self-insurance. . . ."  102 *N.J.* at 607.  The statutory fund created by Newark constituted a "statutory contract" which obligated the municipality "to furnish the UM coverage mandated

---

[3] *Watler,* Mortimer *and* Crocker *all involved accidents which occurred while Transport of New Jersey was a private entity.*

[4] We reject Transit's suggestion that it is not "self-insured": "The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." *American Nurses Assoc. v. Passaic General Hosp.,* 192 *N.J.Super.* 486, 491 (App.Div.1984), modified 98 *N.J.* 83 (1984).

under *N.J.S.A.* 17:28–1.1, to the extent of at least the statutory minimum of $15,000." *Id.* at 608. The court concluded that

> So strong is the public policy favoring UM coverage that in the absence of an unmistakable legislative declaration to the contrary, we are certain that the foregoing principle applies to any legislatively-authorized self-insurance fund, including one formed under the authority of the predecessor to *N.J.S.A.* 40A:10–6.

*Ibid.*

To be sure, Transit does not have a legislatively-authorized self-insurance fund. But it does have legislative authority to self-insure.[5] We see no reason of law or logic why the rationale of *Christy* is not equally applicable. To paraphrase *Christy*, the public policy that all motor vehicles, including those owned by self-insurers, carry UM coverage should not depend for its vitality on whether the owner has a legislatively-authorized self-insurance fund or legislative authority to self-insure without funding. *See* 102 *N.J.* at 607.

We are unpersuaded by Transit's references to *N.J.S.A.* 39:6–54 (exempting from the Motor Vehicle Security-Responsibility Law, *N.J.S.A.* 39:6–23 to 60, "any motor vehicle owned by ... this State or any political subdivision of this State ...") and *N.J.S.A.* 27:25–8 (exempting Transit from the insurance requirements of Title 48). Those provisions allow Transit to operate its buses without obtaining liability insurance. But *Christy* held, with respect to a municipality which also was not required to procure insurance, that the statutory authorization to operate without insurance did not place the publicly-owned motor vehicles beyond the reach of the strong public policy that all motor vehicles registered in New Jersey carry UM coverage. Nor do we find any merit in Transit's contention that *N.J.S.A.* 59:2–1a bars recovery against it for the acts of third parties. *Christy* held that the UM claim was not in tort but was a claim arising out of a "statutory contract." 102 *N.J.* at 610. As we

---

[5]*N.J.S.A.* 27:25–5r permits, but does not require, Transit to procure and enter into contracts for any type of insurance. Transit does not suggest that it could lawfully obtain a liability policy which failed to provide UM coverage.

have already said, Transit's election to self-insure carries the same UM obligations as did Newark's election to establish an insurance fund; there is no reason to characterize Transit's obligations any differently than Newark's.

For those reasons, and in the "absence of an unmistakable legislative declaration to the contrary" (*Id.* at 608), we are satisfied that Transit, as a self-insured public entity, is required to furnish the UM coverage mandated by *N.J.S.A.* 17:28–1.1. The contrary holding in *Transport of New Jersey v. Matos, supra,* which came prior to *Christy,* is accordingly overruled.

The August 29, 1986 order is reversed. The matter is remanded to the Law Division for the entry of an order directing Transit to pay the judgment recovered by Ross against Longson.