NASSAU INSURANCE COMPANY, Respondent, v VINCENT GUARASCIO, Respondent, and CITY OF NEW YORK, Appellant.

Second Department, August 24, 1981

APPEARANCES OF COUNSEL

*Allen G. Schwartz, Corporation Counsel (Edward F. X. Hart* and *Ronald E. Sternberg* of counsel), for appellant.

*Bertram Herman, P. C.*, for Nassau Insurance Company, respondent.

*Carroll & Trapani (Rose M. Trapani* of counsel), for Vincent Guarascio, respondent.

**OPINION OF THE COURT**

TITONE, J.

The primary questions on appeal are whether: (1) ap-

pellant City of New York must furnish uninsured motorist coverage to persons injured in vehicles that it owns or operates, and (2) assuming appellant city must furnish such coverage, did the injured party file a timely notice of claim with the city within the requirements of subdivision a of section 394a-1.0 of the Administrative Code of the City of New York.

## FACTS.

On December 5, 1974 respondent Vincent Guarascio, while acting within the scope of his employment as a sanitation worker for appellant City of New York, was struck by an unidentified motor vehicle which left the scene of the accident. At the time, Guarascio was covered personally under his own motor vehicle liability insurance policy, issued by petitioner Nassau Insurance Company. The policy contained the standard uninsured motorist clause.

On September 8, 1978 Guarascio made a demand for arbitration of his uninsured motorist claim upon Nassau Insurance under his policy of insurance. On September 26, 1978 petitioner insurance carrier filed a verified petition seeking an order temporarily staying arbitration and making the city a party to the proceeding for the purpose of determining whether Guarascio was involved in a hit-and-run accident, and, if so, whether the city or the insurance company should arbitrate the claim. In an order entered November 2, 1978 the Supreme Court, Queens County (KUNZEMAN, J.), ordered a temporary stay of arbitration pending a determination of the issues whether the sanitation truck was insured, whether Guarascio was an occupant of the truck, and whether the city was required to provide uninsured motorist coverage. It also ordered that the city be added as a party to the proceeding.

## DETERMINATION OF TRIAL TERM.

On January 5, 1979, at the conclusion of the hearing ordered by Judge KUNZEMAN, Trial Term (GUMA, J.), made its initial ruling. It found that the offending motor vehicle involved in the hit-and-run accident was an unidentified motor vehicle, and therefore uninsured as a matter

of law, that at the time of the accident Guarascio occupied a sanitation truck owned by the City of New York, and that the city was required to afford uninsured motorist protection to Guarascio pursuant to section 167 of the Insurance Law. However, Trial Term further found that Guarascio had failed to file a notice of intention to file a claim for uninsured motorist benefits with the city within 90 days or as soon as practicable pursuant to the standard uninsured motorist indorsement. Trial Term accordingly vacated the temporary stay of arbitration, denied the petition of the insurance carrier and directed it to proceed to arbitration.

However, upon the insurance company's motion to vacate the court's prior decision, pursuant to CPLR 4404 (subd [b]), Trial Term, although adhering to so much of its original decision holding that the city, as a self-insurer was required to afford uninsured motorist protection (Insurance Law, § 167, subd 2-a), vacated that portion of its original decision wherein it found that Guarascio had failed to give timely notice of his claim for uninsured motorist benefits to the city. In its stead it concluded that (adequate) notice was given the city by Guarascio shortly after the accident in view of the fact that his foreman was at the scene of the accident, the superintendent and personnel from the safety division visited him in the hospital, and Guarascio had completed and filed written accident reports with the city.

Based on such finding, that Guarascio did give proper notice to the city, Trial Term granted the application of petitioner insurance company to stay arbitration and directed the city to afford Guarascio uninsured motorist protection and to proceed to arbitration. It is from this determination that the city appeals.

### THE LAW.

The following verbatim or summarized statutory provisions contained in the Insurance and Vehicle and Traffic Laws are relevant in the instant matter:

Subdivision 2-a of section 167 of the Insurance Law: "No policy insuring against loss resulting from liability imposed

by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance and use of a motor vehicle by the insured shall be issued or delivered by any authorized insurer upon any motor vehicle then principally garaged or principally used in this state unless it contains a provision whereby the insurer agrees that it will pay to the insured, as defined in such provision * * * all sums, not exceeding a maximum amount or limit of ten thousand dollars exclusive of interest and costs, on account of injury to, and all sums, not exceeding a maximum amount or limit of fifty thousand dollars exclusive of interest and costs, on account of death of one person, in any one accident, and the maximum amount or limit, subject to such limit for any one person so injured, of twenty thousand dollars or so killed of one hundred thousand dollars * * * on account of injury to, or death of, more than one person in any one accident, which the insured or his legal representative shall be entitled to recover as damages from an owner or operator of an uninsured motor vehicle, unidentified motor vehicle which leaves the scene of an accident * * * caused by accident occurring in this state and arising out of the ownership, maintenance or use of such motor vehicle."

Vehicle and Traffic Law:

"Article 6—Motor Vehicle Financial Security Act"

"§ 312. Registration of motor vehicles 1. No motor vehicle shall be registered in this state unless the application for such registration is accompanied by proof of financial security which shall be evidenced by a certificate of insurance or evidence of a financial security bond, a financial security deposit or *qualification as a self-insurer under section three hundred sixteen*". (Emphasis supplied.)

"§ 316. Self-insurers

*"The commissioner, in his discretion, may upon the application of a person having registered in his name in this state more than twenty-five motor vehicles, issue a certificate of self-insurance when he is reasonably satisfied that such person is possessed and will continue to be possessed of financial ability to respond to judgments obtained against such person, arising out of the ownership, maintenance, use or operation of any such person's motor vehicles. Upon*

*due notice and hearing, the commissioner may, in his dis-
cretion and upon reasonable grounds, cancel a certificate
of self-insurance * * **

"As a further condition to the issuance of a certificate of self-insurance, the registrant shall pay annually in addition to any other fee prescribed by this chapter, a fee of one dollar and fifty cents for each motor vehicle registered in his name and the aggregate amount of such fees shall be transmitted by the commissioner to the Motor Vehicle Accident Indemnification Corporation created pursuant to section six hundred two of the insurance law to be applied in reduction of assessments levied by said corporation pursuant to section six hundred seven of the insurance law."[1] (Emphasis supplied.)

"§ 321. Exceptions. 1. This article shall not apply to any motor vehicle for the operation of which security is required to be furnished under section three hundred seventy of this chapter * * * *nor to any motor vehicle owned by the United States, any state or any political subdivisions of any state.*" (Emphasis supplied.)

"Article 7—Motor Vehicle Safety Responsibility Act" This article relates to the suspension and revocation of licenses and registrations upon failure to satisfy a judgment for damages caused by a motor vehicle accident. It contains provisions, *inter alia*, for the filing of a bond (§ 349), or for depositing money or securities (§ 350), as proof of financial responsibility.

"§ 360. Exceptions. This article * * * shall not apply to any motor vehicle for the operation of which security is required to be furnished under section three hundred seventy of this chapter * * * *nor to any motor vehicle owned by the United States, the state or any political subdivision thereof.*" (Emphasis supplied.)

Section 370 of the Vehicle and Traffic Law (included in article 8, entitled "Indemnity Bonds or Insurance Policies on Vehicles Transporting Passengers for Hire") requires

---

1. Under section 602 of the Insurance Law each insurer authorized in this State to write motor vehicle liability insurance is a member of the Motor Vehicle Accident Indemnification Corporation (MVAIC), a nonprofit corporation. Under section 607 of the same law, assessments may be levied against such members of the corporation for the operation of its business.

under subdivision 1 that any person, firm or corporation engaged in the business of transporting passengers for hire, except vehicles *"owned and operated by a municipality"* (emphasis supplied), shall file either an indemnity bond or certificate of insurance.

Paragraph (b) of subdivision 1 provides that notwithstanding any other provision such bond or certificate of insurance shall also provide for uninsured motorist coverage in the minimum amount and in the form provided for in subdivision 2-a of section 167 of the Insurance Law.

### DETERMINATION ON APPEAL.

The determination of Trial Term should be reversed and the petition dismissed.

(1) It has been held that "Insurance" exists when a contractual relationship between insurer and insured shifts the risk of loss of the insured to the insurer. "Self-insurance" on the other hand is the assumption of risk of loss by one having an insurable interest *(United States v Newton Livestock Auction Market,* 336 F2d 673, 676-677).

In this instance, appellant city, subject to liability for any tortious acts of employees such as respondent Guarascio, or accidents involving its motor vehicles (Court of Claims Act, § 8)[2] had an insurable interest in both Guarascio and the sanitation truck. However, the city, although subject to tort liability, is statutorily exempt from the requirement of providing proof of financial security on its motor vehicles pursuant to article 6 of the Vehicle and Traffic Law, by virtue of the statutory exemption granted political entities under section 321 of the same law, quoted in part above. Since the city evidently has not voluntarily obtained liability coverage for its vehicles, it has assumed the risk of its own loss, and is, therefore a self-insurer, albeit, an unregulated one.

Accordingly there are two classes of owners of motor

---

2. When the State of New York waived its immunity by virtue of the enactment of an appropriate provision of the Court of Claims Act (now Court of Claims Act, § 8), immunity of municipal components such as appellant city, which have no independent sovereignty, disappeared to the same extent *(Spiegler v School Dist. of City of New Rochelle,* 39 Misc 2d 720, affd 19 AD2d 751).

vehicles registered in this State who are self-insurers, to wit, regulated and nonregulated self-insurers. The first class, the regulated self-insurers, consists of those persons in the private sector who own more than 25 vehicles and obtain certificates of self-insurance under section 316 of the Vehicle and Traffic Law. The second class of self-insurers consist of governmental entities such as appellant city. By virtue of section 321 of the Vehicle and Traffic Law, the city is immunized from the requirement of furnishing proof of financial security pursuant to article 6.

Whether a regulated self-insurer not in the business of transporting passengers for hire or renting or leasing motor vehicles (see Vehicle and Traffic Law, § 370), is required by law to furnish uninsured motorist coverage is not before the court at this time. The thrust of dictum in the opinion of Justice SHAPIRO (formerly of this court) in *Matter of New York City Tr. Auth. (Thom)* (70 AD2d 158, 171-172), would seem to suggest that a regulated self-insurer not engaged in those two businesses must provide such coverage. Yet there is no provision in section 316 of the Vehicle and Traffic Law conditioning the granting of self-insurer status to such persons upon such a requirement. Moreover, section 321 contained in the same article (6), specifically states that article 6 does not apply to any motor vehicles for which security is to be furnished under section 370.

However, and contrary to the determination of Trial Term, by virtue of being a political subdivision of this State, appellant city, an unregulated self-insurer, is excluded from the requirement of furnishing uninsured motorists coverage for its vehicles (see *Matter of New York City Tr. Auth. [Thom], supra,* at p 162). The clear purport of sections 321, 360 and 370, contained in articles 6, 7 and 8 of the Vehicle and Traffic Law, respectively, whether read individually or in tandem, is that a municipality of this State, such as appellant city, being exempt from the requirement of furnishing any means of proof of financial security and responsibility set forth in such articles, i.e., policy of liability insurance, surety bond, security deposit, or certificate of self-insurance, concomitantly is not required to furnish proof of the protection afforded under any instruments afore-mentioned.

It should be noted that with respect to the operation of vehicles for hire, two Justices of a four-Justice Bench of the Appellate Division, First Department, in a concurring opinion, stated in 1967 that, evidently through an oversight by the State Legislature, as to such vehicles, uninsured motorist provisions were not to be deemed included in bonds given pursuant to section 370 of the Vehicle and Traffic Law as it then read *(Matter of Mackey [Allcity Ins. Co.]*, 27 AD2d 728). The reason given by the two Justices (STEUER and RABIN, JJ.), was that the specific exemption given to vehicles for hire in section 321 from the application of financial security provisions set forth in section 312, precluded the inclusion of uninsured motorists provisions in bonds given pursuant to section 370. The two Justices concluded the opinion by stating (p 729) : "The attention of the Legislature is invited to this situation."

As a possible result of the views expressed by the two Justices in *Matter of Mackey (Allcity Ins. Co.) (supra)*, the State Legislature, in 1971, specifically amended subdivision 1 of section 370 by adding the following undesignated paragraph (L 1971, ch 794, eff Sept. 1, 1971) : *"Notwithstanding any contrary provision of this chapter, any such bond, or policy of insurance shall also provide for uninsured motorists coverage in the minimal amount and in the form provided for in subdivision 2-a of section one hundred sixty-seven of the Insurance Law."* (Emphasis supplied.)

Clearly, the afore-quoted amendment to section 370 was designed to provide what had not been provided previously in such section, namely, uninsured motorists coverage for a party injured in an accident involving a nonmunicipal carrier for hire (subd 1), or a regulated self-insured person engaged in leasing or renting motor vehicles (subd 3). (See *Allstate Ins. Co. v Holly Diane*, NYLJ, Sept. 11, 1978, p 12, col 1.) Obviously the amendment was not enacted to expand the already broad exemptive right granted a municipality under section 370, but rather became subject to the exemption. Thus it may not be inferred that until the enactment of the above amendment a municipality, otherwise exempt from the provisions of section 370, was nevertheless required to provide uninsured motorist cov-

erage on vehicles used by it in the transporting of passengers for hire. Subsequent amendments generally cannot be considered as indicating the intention of the Legislature in adopting earlier statutes (82 CJS, Statutes, § 384).

By a parity of reasoning although there is no specific language in section 321 or section 360 of the Vehicle and Traffic Law including uninsured motorist coverage under the exemptions granted to a municipality in such sections, the broad exemptive rights granted to a municipality under such sections afford a municipality immunity from any obligation to provide uninsured motorist coverage under subdivision 2-a of section 167 of the Insurance Law.

Moreover, it is highly doubtful that the Legislature ever intended that municipal vehicles used in the transporting of passengers should be exempt from uninsured motorist coverage, and that all other municipal vehicles, such as sanitation trucks, should not be exempt. If anything a municipality would appear to have a vastly wider exposure to the risk of liability and greater responsibility to the public in the operation of its buses, than in the operation of its noncarrier vehicles such as sanitation trucks. Apparently, the Legislature intended that the exemptive right of a municipality vis-à-vis uninsured motorists coverage, should encompass both carrier and noncarrier vehicles owned and operated by it.

In determining that political subdivisions of the State such as appellant city need not provide uninsured motorists coverage, it should be noted that an insured person is not without remedy by virtue of such legislative exclusion. In the case of the "insured" person (see Insurance Law, § 601), i.e., one who is insured under coverage required by subdivision 2-a of section 167 of the Insurance Law, such individual may recover his uninsured motorist benefits directly from his insurer (see Insurance Law, § 167, subd 2-a; § 605). On the other hand a "qualified" person receives his benefits from the MVAIC and not an insurance carrier (see Insurance Law, § 605, subd [c]; § 621-a; see, also, 2A Encyclopedia New York Law, Automobiles, § 1350 et seq.).

Accordingly, we conclude that Trial Term erred in holding that appellant city must provide uninsured motorists

coverage to the injured respondent. His proper remedy is against his insurer, petitioner Nassau Insurance Company.

(2) The city also alleges on appeal that assuming it is required to provide uninsured motorist protection, Trial Term erred in determining that respondent Guarascio had sufficiently complied with the notice requirement of subdivision a of section 394a-1.0 of the Administrative Code. The provision states in part: "§ 394a-1.0 Actions against the city.—a. In every action or special proceeding prosecuted or maintained against the city, the complaint or necessary moving papers shall contain an allegation that at least thirty days have elapsed since the demand, claim or claims, upon which such action or special proceeding is founded, *were presented to the comptroller for adjustment, and that he has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment,* except that in every action or special proceeding in relation, to excise or non-property taxes, such complaint or necessary moving papers shall contain an allegation that such demand, claim or claims upon which the action or special proceeding is founded, were presented to the director of finance for adjustment and that he has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment. (Subd. a amended by L.1965, ch. 829, July 16.)" (Emphasis supplied.)

As previously mentioned, Trial Term determined that the injured respondent had given the city sufficient notice under the law. However, it is undisputed that the only notice given to the city was the filing by Guarascio of hit-and-run accident reports with the police and the fact that city personnel, including Guarascio's superior, were aware that he was involved in an accident. Thus, since Guarascio obviously failed to present a demand to the Comptroller with respect to uninsured motorists coverage, pursuant to the terms of subdivision a of section 394a-1.0, his claim, if otherwise viable, would still have to be dismissed. Where the provisions of subdivision a of section 394a-1.0 would apply, compliance therewith is a necessary prerequisite to the commencement of an action *(Arol Dev. Corp. v City of*

*New York*, 59 AD2d 883; see *Matter of Tanner* [*City of New York*], 67 AD2d 863, 864).

Accordingly, the judgment of Trial Term (1) granting the petition of insurer Nassau Insurance Company to stay respondent Guarascio from arbitrating his claim under the MVAIC indorsement on his policy of insurance, and (2) directing appellant City of New York to afford respondent Guarascio uninsured motorist protection in accordance with subdivision 2-a of section 167 of the Insurance Law and proceed to arbitration forthwith, must be reversed, on the law, with one bill of costs to appellant, and the petition dismissed.

MOLLEN, P. J., MANGANO and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Queens County, entered June 15, 1979, reversed, on the law, with one bill of $50 costs and disbursements, and petition dismissed.