OPINION OF THE COURT
Lawrence H. Bernstein, J.
The court sua sponte recalls its decision of November 26,1984, to the extent of deleting the last paragraph thereof and the decision shall read as follows:
This is an application by petitioner, the City of New York (City), seeking a permanent stay of arbitration and disallowance of respondents’ uninsured motorist claim.
The case presents an unusual question of law as to whether the City of New York, a self-insurer, is obligated to provide uninsured motorist benefits to respondent police officers who were injured in a collision between their police vehicle and an uninsured automobile.
The accident occurred in The Bronx on January 1,1982, when the police car in which the two respondents were riding was struck in the rear by a concededly uninsured vehicle.
On August 3,1984, respondents pursuant to CPLR 7503 (subd [c]) properly served a demand for arbitration upon petitioner. It is conceded that the City did not serve its petition to stay arbitration until August 24, 1984, one day beyond the 20-day limit prescribed by CPLR 7503 (subd [c]).
The 20-day statutory period is construed as a strict Statute of Limitations and lateness of even one day, as here, will result in *378 a complete forfeiture of the petitioner’s right to contest compliance with an arbitration agreement or challenge the failure of the party seeking arbitration to fulfill any condition precedent to arbitration. (See Matter of Raisler Corp. [New York City Housing Auth.], 32 NY2d 274.)
Accordingly, assuming arguendo that an arbitration agreement exists between petitioner and respondents, the City’s failure to apply for a stay of arbitration within 20 days precludes it from contesting arbitration upon the grounds that respondents never satisfied the condition precedent of making a formal demand for payment upon the comptroller as mandated by subdivision a of section 394a-1.0 of the Administrative Code of the City of New York in any action or special proceeding against the City (cf. Nassau Ins. Co. v Guarascio, 82 AD2d 505).
However, the City also seeks a stay of arbitration upon the ground that no agreement to arbitrate had ever been entered into between it and respondent police officers. Where such an assertion is made, the law does permit a court to entertain an application to stay arbitration, notwithstanding that the stay was sought after the expiration of the 20-day period. Judicial intervention is not precluded under these circumstances since the Legislature never intended that mere inaction for 20 days would compel persons to arbitrate claims where they had never consented to the arbitral process in the first place. (See Matter of Matarasso [Continental Cas. Co.], 56 NY2d 264.)
Whether an agreement to arbitrate exists in this case will turn on the initial question of the City’s responsibility to maintain uninsured motorist coverage for police officers involved in a motor vehicle accident involving a police vehicle. The recent case of Matter of Country-Wide Ins. Co. (Manning) (96 AD2d 471, affd 62 NY2d 748), involving an employee of the New York City Department of Transportation (DOT) who was injured in a collision with an uninsured motorist while driving a DOT automobile, would appear to be dispositive of this issue. It is the latest in a series of decisions in which the courts have, as a consequence of the strong public policy of this State to compensate innocent victims of financially irresponsible motorists, placed the self-insurer in the same position as one who has purchased an automobile liability policy with respect to securing uninsured motorist protection (see earlier cases of Matter of Allstate Ins. Co. v Shaw, 52 NY2d 812, requiring the self-insured lessor of vehicles for hire to provide uninsured motorist coverage; Matter of New York City Tr. Auth. [Thom], 70 AD2d 158, affd 58 NY2d 1032, requiring the same of the New York City Transit Authority).
*379 The court in Manning (supra) held that the City was responsible to provide uninsured motorist coverage to the injured employee to the same extent as required in subdivision 2-a of section 167 of the Insurance Law (the compulsory inclusion of the uninsured motorist indorsement in every automobile liability policy), notwithstanding that the City, as a political subdivision, is an unregulated self-insurer, otherwise exempt from furnishing proof of financial security and responsibility under the law relating to automobile liability insurance (see, e.g., Vehicle and Traffic Law, § 321, subd 1; § 360).
Furthermore, it seems clear that once a self-insurer is bound to furnish uninsured motorist coverage under subdivision 2-a of section 167 of the Insurance Law, it is compelled under the compulsory uninsured motorist indorsement re°quired therein to proceed to arbitration in order to resolve any disputes concerning an uninsured motorist claim. (See Matter of Manhattan & Bronx Surface Tr. Operating Auth. (Evans), 95 AD2d 470.) Accordingly, if the Manning decision (supra) applies to the facts of the instant case, an agreement to arbitrate will be found to exist and the application to stay arbitration must be denied.
The court is of the opinion, however, that the matter herein is distinguishable from the general rule in Manning (supra) in view of the fact that the accident in the present case involved a police vehicle. The court in Manning reached the result therein as a matter of public policy and because there was nothing in the statutes which expressly precluded compulsory provision by the City of uninsured motorist coverage for its motor vehicles. However, with respect to police vehicles in particular, a different statutory framework exists.
Subdivision (a) of section 5202 of the Insurance Law specifically excludes police vehicles from the definition of “Motor vehicle” as used in the Motor Vehicle Accident Indemnification Corporation Act, article 52 of the Insurance Law. The Motor Vehicle Accident Indemnification Corporation Act (formerly Insurance Law, art 17-A) and subdivision 2-a of section 167 of the Insurance Law were enacted together in 1958, as complementary provisions to supplement and close the existing gaps in the compulsory liability insurance law so as to provide for the first time compulsory coverage for persons injured by uninsured motorists. (See NY Legis Ann, 1958, pp 244, 299, 436, 473.)
Under this statutory scheme, subdivision 2-a of section 167 of the Insurance Law provided for the compulsory inclusion of the so-called uninsured motorist indorsement in automobile liability policies with the right of an insured under the policy to seek *380 indemnification from the Motor Vehicle Accident Indemnification Corporation (MVAIC). Article 17-A of the Insurance Law itself provided for the assumption by MVAIC of claims by “qualified” persons, i.e., those persons other than those for whom protection is afforded under the automobile liability insurance policy mandated by subdivision 2-a of section 167 of the Insurance Law. In 1965 the Legislature amended subdivision 2-a of section 167 of the Insurance Law to transfer from MVAIC to the insurer itself the responsibility for payment of claims to persons injured under its automobile liability policy’s uninsured motorist indorsement.
From this brief summary, it is clear that MVAIC could not be liable to “qualified” persons for uninsured motorist claims arising out of an accident involving a police vehicle since section 5202 of the Insurance Law specifically excludes such vehicles from the provisions of the Motor Vehicle Accident Indemnification Corporation Act. It appears that the most likely explanation for such an exemption is the cost factor arising from the multiplicity of automobile accidents involving police vehicles.
The question for resolution in the present case is, therefore, whether the City, now responsible as a self-insurer under Manning (supra) to provide uninsured motorist coverage pursuant to subdivision 2-a of section 167 of the Insurance Law is likewise exempted from this usual responsibility by virtue of the specific statutory exclusion for police vehicles found in section 5202 of article 52 of the Insurance Law. There appears to be no reason to read the responsibility of an insurer or self-insurer under subdivision 2-a of section 167 of the Insurance Law as greater than that of MVAIC under article 52. Both subdivision 2-a of section 167 and article 52 of the Insurance Law were designed to accomplish the same general objective of protecting persons from financially irresponsible motorists. These provisions differ only administratively in that subdivision 2-a of section 167 will apply by virtue of the existence of an automobile liability insurance policy or, as here, self-insurance whereas article 52 will come into play where the injured is not so insured.
It has been held that the standard automobile uninsured motorist indorsement mandated by subdivision 2-a of section 167 is not strictly a private contract but one whose terms are subject to being in conformity with statutory requirements and public policy (see Matter of Durant [MVAIC], 20 AD2d 242, mod on other grounds 15 NY2d 408). Accordingly, there being no reason to distinguish the policy objectives of subdivision 2-a of section 167 from article 52, no statutory authorization exists for *381 treating police vehicles differently under one provision than the other. (See Matter of Tanner [City of New York], 67 AD2d 863.) The City is thus not obligated as a self-insurer to provide for uninsured motorist coverage to the respondents herein and the application to permanently stay arbitration and disallow the claim is granted.
Settle judgment.