227 N.J. Super. 152 (1988)
549 A.2d 905
ALLSTATE INSURANCE COMPANY PLAINTIFF,
v.
ARTHUR ALVARADO AND CITY OF NEWARK DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided February 11, 1988.
*153 Thomas A. Wester, argued the cause for plaintiff (McDermott, McGee and Ruprecht, attorneys).
Ronald Washington, Assistant Corporation Counsel, argued the cause for defendants (Glenn A. Grant, Corporation Counsel for City of Newark).
*154 WALLS, J.S.C.
As a self insurer, Newark is legally mandated to provide uninsured motorist coverage to its employees such as here to the policeman who, while driving a municipally-owned automobile, sustained personal injuries because of the collision with his vehicle by one driven by an uninsured motorist. Christy v. Newark, 102 N.J. 598 (1986).
At the time of the collision, May 29, 1983, the employed policeman was also covered and protected by his own privately obtained, uninsured motorist insurance coverage provided by Allstate Insurance Company, the plaintiff herein. By this motion, plaintiff seeks resolution in its favor of the following questions:
Should the Christy, the judicially prescribed, uninsured motorist, coverage of the municipality be deemed primary in satisfaction of any liability prior to that of the protection bought and paid for by the employee from a private carrier?
Additionally, now that Newark is deemed the provider of uninsured motorist coverage, must it submit controversies arising from such coverage to arbitration?
The following discussion compels the conclusion that those questions be answered adversely to the interests of the moving party.
Allstate demands that Newark furnish primary coverage of its uninsured motorist benefits to the injured employee Alvarado for one reason, i.e., Allstate's policy with Alvarado says so:
"If there is another applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."
Obviously, such a contractual understanding between this carrier and its insured is not binding upon Newark, a nonparty to the agreement of insurance. Without more, Newark may be affected by, but cannot be directly obligated to such terms.
On the other hand, Newark argues that Allstate should pay its benefits first and contends that earlier decisions of our *155 appellate courts countenance such an approach. Montedoro v. Asbury Park, 174 N.J.Super 305 (App.Div. 1980); State Farm Mutual Auto Liab. v. Kiser, 168 N.J. Super. 230 (App.Div. 1979); Walkowitz v. Royal Globe Insurance Company, 149 N.J. Super. 442 (App.Div. 1977); Transport of New Jersey v. Watler, 161 N.J. Super. 453 (App.Div. 1978); Mortimer v. Peterkin, 170 N.J. Super. 598 (App.Div. 1979).
From these, Newark, in its brief, seems to conclude that there is a judicial predilection to favor the interests of a municipality vis-a-vis those of the private sector.
Such conclusion is erroneous. The aforecited, distinguished writings serve individually as steps in the development of the legislative goal of New Jersey to provide necessary benefits to victims of accidents involving vehicles operated by uninsured drivers and collectively, as "the springboard for resolution of the essential issue ..." of Christy v. Newark, 102 N.J. 598 (1986). Transport of New Jersey v. Watler, 161 N.J. Super. 453 (1978) aff'd as modified, 79 N.J. 400 (1979). That issue was, as we know, whether Newark, which had established an insurance fund pursuant to N.J.S.A. 40A:10-6, was required to furnish uninsured motorist coverage. And we know the answer of Christy.
Still, Newark contends that the cases decided before Christy and NJSA 59:1-1 et seq., specifically 59:9-2(e) of the Tort Claims Act, require a deduction in any amount due from a public entity which is compensated by a third party. The insurance carrier should exhaust the limits of its coverage before the municipality pays, Newark argues.
Generally, too rigid a reliance upon the Tort Claims Act is not sanctioned by our highest court which, in Christy, agreed with the refusal of the Appellate Division to characterize a claim for uninsured motorist benefits as "one in which a claim for tort has been asserted against the City. The claim is one arising out of a contract  here, a statutory contract founded in NJSA 40A:10-6 ..." Christy v. Newark, 102 N.J. 598 at 610. It is "in effect, a contractual substitute for a tort action against an *156 uninsured motorist." Midland Insurance Co. v. Colatrella, 102 N.J. 612 at 617.
In his review of NJSA 34:15-40, Justice Pollack, writing for the majority in Colatrella, determined that "the Legislature has expressed its intent that a compensation lien should be attached to the recovery from a third party tort feasor. Thus, we remain persuaded that when a negligent motorist, including one who is uninsured or unidentified injures a motorist, a compensation lien should attach to the uninsured motorist proceeds recovered by the injured employee." The Justice then defined the rationale "... [w]e base our decision on the belief that the primary concern of the Legislature here as in other work related injuries caused by third party tort feasors, is to integrate the source of recovery (emphasis supplied)." Id. at 618.
Perhaps, something less than rigid reliance upon Tort Claims Section 59:9-2 may be allowed. As has been earlier indicated, Allstate asserts that its "excess coverage" clause requires that Newark pay its uninsured motorist benefits first to the injured Alvarado. Newark resists this suggestion and relies on NJSA 59:9-2(e):
"If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tort feasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee."
The above provides to Newark a statutory variation of the "excess coverage" clause earlier mentioned and found in the private policy between Allstate and Alvarado. To so construe the statute is not to recognize or even "characterize" a claim as one "for tort asserted against the City." See Christy, supra 102 N.J. at 610. Rather it is nothing more nor less than the *157 salutory, judicial acknowledgment of and deference to explicit legislative policy. Our law makers have ordained that contractual benefits flowing from tortiously created injuries which "duplicate" benefit awards from a public entity (a municipality, in this case) are subject to deduction from the award against the public entity. (Only the rights of a life insurance beneficiary under this section may not be restricted.) This writer further suggests that if NJSA 59:9-2(e) did not exist with regard to this present controversy, its equivalent would have to be judicially crafted to accompany the judicially discerned uninsured motorist coverage. No reason of law or public policy has been advanced to suggest that Newark should, by judicial determination, be placed at the outset in a position inferior to that of a private carrier in this setting. Newark, judicially obligated to provide uninsured motorist coverage, should have the benefits as well as the responsibilities of any private carrier. The coverage required should be no broader than that afforded by the contesting commercial carrier. Each must provide uninsured motorist benefits to Alvarado. Each has an "excess coverage" proviso.
Evermindful of the rationale of Colatrella and Christy, it is determined that the policy and language of NJSA 17:28-1.1 and 59:9-2(e) are not inharmonious.
Moreover, unlike Ciecka v. Transamerica Insurance Group, 81 N.J. 421 (1979) and Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., 28 N.J. 554 (1959) where each of the contesting carriers had an "excess coverage" clause and the courts concluded that because none could be deemed primary, none could be deemed secondary and all shared liability equally, our circumstances are different. They are made different because Newark's "excess coverage" proviso is law and has the force thereof. The contractual provisions of Allstate and Alvarado, if contrary, will have to yield to the explicit priority of NJSA 59:9-2(e), which has been New Jersey law since 1972 and *158 presumably predates the Alvarado agreement. Agreements are considered drafted within the context of existing law. (If the Allstate policy antedates 59:9-2(e), the court would consider the approach, rationale and holding of Cosmopolitan dispositive.)
It is determined that Newark is, by law, entitled to have payments required to be made by Allstate deducted from any payment for similar benefits required to be made by Newark. Practically, therefore, Allstate is deemed to be the primary obligor, subject obviously to the limit of its agreed coverage; Newark placed in secondary position.
Unfortunately, the final question posed by the Supreme Court in Christy in 1986 cannot be answered by this trial court in 1988. Has the Commissioner of Insurance, who is charged with the enforcement of the uninsured motorist statute, NJSA 17:28-1.1, by regulation or form, subjected all insurers to compulsory arbitration of disputes?
No party has provided the court with evidence sufficient to provide an answer. The writer is guided, accordingly, by the caveat:
"Were we certain that the only form that the Commissioner has approved for the provision of uninsured motorist benefits called for arbitration, we would again have no hesitancy in making arbitration a part of Newark's obligation. As well, there may be some regulation of the Commissioner that covers the subject, although none has been called to our attention." Christy v. City of Newark, 102 N.J. 598 at 611 (1986).
Absent that, no precedent of statute or case law has been advanced to mandate a nonconsenting municipality as is Newark, to submit to arbitration. In re Matter of Arbitration Between Glover, 80 N.J. 221, 228-229 (1979), Newark is not required to submit the Alvarado matter to arbitration.
Newark shall submit the appropriate order reflecting the above.