598 A.2d 252

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., PLAIN-
TIFF, v. TOWNSHIP OF WOODBRIDGE, RICHARD GEORGE,
RASMUSSEN ADMINISTRATORS & GALLAGHER BASSETT
SERVICES, INC., DEFENDANTS.

Superior Court of New Jersey
Law Division Middlesex County

Decided October 2, 1991.

*C. Edward Speidel,* for defendants Township of Woodbridge and Gallagher Bassett Services, Inc. (*Messrs. Golden, Rothschild, Spagnola & Di Fazio*).

*Gregory A. Drews,* for defendant Richard George (*Martin & Simmonds*).

*Michael J. Barrett,* for plaintiff (*Wilentz, Goldman & Spitzer*).

HAMLIN, J.S.C.

This is a motion by Woodbridge Township and Gallagher Bassett Services, Inc. for Summary Judgment dismissing the Complaint of State Farm Mutual Auto Insurance Company (State Farm) and a cross-motion by State Farm for Summary Judgment.

State Farm brought a declaratory judgment action seeking a determination that: 1) Richard George, an employee of Woodbridge Township and a State Farm policy holder, is barred by the Fireman's Rule from proceeding with his uninsured motorist (UM) claim; 2) Woodbridge Township has sufficient UM

coverage to satisfy the underlying claim; and 3) such coverage should be prorated with that of State Farm.

The facts in this case are not in dispute. Mr. George's UM claim arises out of an accident which occurred on August 4, 1987, in which Mr. George, while acting in his capacity as police officer for Woodbridge Township, was injured by an uninsured motorist. As of the accident date, Woodbridge Township was self-insured for the first $50,000 of any loss, with excess coverage provided by Lloyds of London for $450,000. The dispute before this court centers on the question of who will be responsible for any possible future arbitrator's award in Mr. George's UM claim.

A UM claim has a dual nature; it combines elements of contract and tort law. As noted by the court in *Ross v. Transport of New Jersey*, 114 *N.J.* 132, 553 *A.*2d 12 (1989), "an uninsured motorist claim is a statutory cause of action which has many characteristics of a tort action." *Id.* at 145, 553 A.2d 12. As such, reference to provisions of both the No Fault Act and the Tort Claims Act is necessary to understanding and resolving this claim.

■ Woodbridge Township, as a self-insurer pursuant to *N.J.S.A.* 40A:10–6, is required to carry UM coverage. *Ross,* 114 *N.J.* at 144, 553 *A.*2d 12; *Christy v. City of Newark,* 102 *N.J.* 598, 608, 510 *A.*2d 22 (1986); *Allstate Ins. Co. v. Alvarado,* 227 *N.J. Super* 152, 154, 549 *A.*2d 905 (Law Div.1988). Such UM coverage is governed by *N.J.S.A.* 17:28–1.1 which provides in pertinent part:

> "c. Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured. If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be

prorated between the applicable coverages as the limits of each coverage bear to the total of the limits."

*N.J.S.A.* 17:28–1.1(c).

In addition, Woodbridge Township, as a public entity, is governed by the Tort Claims Act whenever questions of tort liability arise. *N.J.S.A.* 59:1–1 *et seq.; Ross,* 114 *N.J.* at 145, 553 *A.*2d 12; *Transport of New Jersey v. Matos,* 202 *N.J.Super* 571, 575, 495 *A.*2d 503 (Law Div.1985). Relevant to this dispute is *N.J.S.A.* 59:9–2(e), which states:

"e. If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity on public employees."

The rationale of *Ross* facially presents conflicts that may be resolved differently by the courts. Most recently one of our learned brothers in a Law Division case concluded that a self-insured public entity was required to provide UM benefits to its employees on a *pro rata* basis with their personal UM coverage. *Rox v. Allstate,* 250 *N.J.Super.* 536, 595 *A.*2d 563 (Law Div.1991). It is noted however that the court there reached its decision relying exclusively on *Christy* (supra). There does not appear an analysis of the subsequent opinions rendered in *Ross* or *Allstate v. Alvarado,* 227 *N.J.Super.* 152, 549 *A.*2d 905 (Law Div.1985). This court is not bound by an opinion of a court of equal rank, *May Stores v. Hartz Mtn.,* 162 *N.J.Super.* 130, 392 *A.*2d 251 (Ch.Div.1978); *Porter & Ripa v. 200 Madison Ave.,* 159 *N.J.Super.* 317, 387 *A.*2d 1248 (Ch.Div.1978). I decline to follow *Rox, supra.* Rather I am persuaded that an analysis of the interplay of governmental immunity and the allocation of UM coverage is necessary.

In *Ross,* the court was faced with the question of whether the governmental immunity provision of the Motor Vehicle

Security Responsibility Law, *N.J.S.A.* 39:6–54, was applicable to the Compulsory Insurance Law, *N.J.S.A.* 39:6B–1 *et seq.;* and *N.J.S.A.* 17:28–1.1, which among other things, require UM coverage. After exhaustively examining the various statutory schemes at issue, the *Ross* court concluded that the governmental immunity provision found at *N.J.S.A.* 39:6–54 applied to the public entity involved therein. The court grounded its decision in the public policies and legislative intent underlying the statutes in issue:

> "The decision that Transit [the public entity] not be required to insure or be self-insured, however, implicates not only the policy of limiting liability of public entities but also the policies expressive of the desire to compensate victims of uninsured motorists and of the need to protect the financial integrity of the UCJF. The public policy behind the Tort Claims Act and the *N.J.S.A.* 39:6–54 exemption is not inconsistent with the public policies favoring UM coverage and protection of the UCJF's financial integrity, given the statutory scheme involved in this case. The latter two public policies are so strong that they should be applied to all possible situations 'in the absence of an unmistakable legislative declaration to the contrary.' *Christy, supra,* 102 *N.J.* at 608 [510 *A.*2d 22]."

*Ross,* 114 *N.J.* at 146, 553 *A.*2d 12.

The rationale supporting the *Ross* decision is applicable to the facts before this court. Although the governmental immunity exemption raised in the instant case is found in the Tort Claims Act, rather than in the Motor Vehicle Security Responsibility Law as in *Ross,* the central issue remains the same. This court must decide if *N.J.S.A.* 59:9–2(e) is one of the limited situations where the public policy favoring UM coverage is overridden by a statutorily granted immunity. *Ross,* 114 *N.J.* at 146, 553 *A.*2d 12.

The standard to be applied in such a decision is set forth in *Christy, supra.,* and reiterated in *Ross.* "In the absence of an unmistakable legislative declaration to the contrary", the public policy underlying the UM coverage mandated by *N.J.S.A.* 17:28–1.1 is so strong that it should be applied to all possible situations. *Ross,* 114 *N.J.* at 146, 553 *A.*2d 12; *Christy,* 102 *N.J.* at 608, 510 *A.*2d 22. While the language of the *Christy* test demands cautious application; here, the required "unmis-

takable declaration" clearly exists. It is provided by the Tort Claims Act at *N.J.S.A.* 59:9–2(e).

The public policy behind the Tort Claims Act is unequivocally expressed both in the plain language of the statute and in the accompanying Comment. *N.J.S.A.* 59:9–2(e) states that any insurance coverage which "duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant." The Comment following this provision states that:

"This provision is consistent with the 'no duplicate benefits' approach in the act and reflects a recognition that profit-making insurance companies are in a better position to withstand losses which they contract for than are the already economically burdened public entities."

In addition,

"[n]owhere in the Tort Claims Acts does it provide that a public entity may be held liable for acts of another. An uninsured motorist is clearly 'another person' for whom the public entity may be held liable."

*Ross,* 114 *N.J.* at 145–146, 553 *A.*2d 12, quoting *Matos,* 202 *N.J.Super* at 575, 495 *A.*2d 503.

The foregoing provides the unmistakable declaration called for by *Christy* and *Ross.* The policy limiting public entity liability, as reflected in the Tort Claims Act, outweighs the policy protecting victims of uninsured motorists, as reflected in *N.J.S.A.* 17:28–1.1. Accordingly, the requirement of Title 17 UM coverage must yield to the mandate of governmental immunity granted by *N.J.S.A.* 59:9–2(e). Woodbridge Township's motion for Summary Judgment is granted. State Farm's cross-motion for Summary Judgment must be denied.