CITY OF GARY and the City of Gary
Police Department, Appellants–Third
Party Defendants Below,

Luis Deluna, Jr., Appellant–
Plaintiff Below,

v.

ALLSTATE INSURANCE COMPANY,
Appellee–Defendant–Third Party
Plaintiff Below.

No. 04A03–9202–CV–31.

Court of Appeals of Indiana,
Third District.

Sept. 8, 1992.

Nathaniel Ruff, Lesniak & Ruff, East Chicago, for Luis Deluna, Jr.

Eric Oden Clark, Gary, for City of Gary and City of Gary Police Dept.

Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, for Allstate Ins. Co.

STATON, Judge.

In this consolidated appeal, the City of Gary and the Gary Police Department (City), along with Luis Deluna, Jr., appeal the trial court grant of summary judgment in favor of the defendant and third-party plaintiff Allstate Insurance Company (All-

state). The appellants contend that the grant of summary judgment was in error. Allstate claims that the appellants are collaterally estopped from challenging the summary judgment.

We reverse.

The material facts are not in dispute. On or about December 9, 1986, Deluna was operating a City-owned police car while in the course and scope of his employment as a Gary police officer when his car struck a vehicle driven by Hanford Reed. Deluna sustained personal injuries and sued Reed. When it was learned that Reed's insurance company became insolvent, Deluna added a second count to his complaint against Allstate under the uninsured motorist provisions of his own insurance policy. Allstate filed a third-party complaint against the City, alleging that, as the insurer of the police car, the City was primarily liable for uninsured motorist coverage. The trial court agreed, and granted Allstate's motion for summary judgment.

### Standard of Review

■ On an appeal from the grant of summary judgment, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, 454. Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Kolczynski v. Maxton Motors, Inc.* (1989), Ind.App., 538 N.E.2d 275, 276, *trans. denied.*

### I.

Before we address the appellants' contentions, we consider Allstate's claim that the appellants are collaterally estopped from relitigating the issue of whether the City is primarily liable for uninsured motorist coverage because a virtually identical issue was raised and resolved against the City in a separate, unrelated lawsuit. The other suit also involved a Gary police officer, Roger Smith, who sued the City for uninsured motorist coverage after being injured in an automobile accident while working. The City did not appeal the prior ruling, which was entered less than a month prior to the judgment in the present case. Allstate argues that issue preclusion is appropriate because Smith and Deluna, who are both Gary police officers, are in privity, and the remaining elements of collateral estoppel have been satisfied.

■ In an opinion recently issued by this court, Judge Hoffman examined the doctrine of collateral estoppel, or issue preclusion, and concluded that this branch of *res judicata* can bar the relitigation of an issue, even though privity of parties and mutuality of estoppel are absent. *White v. Allstate Insurance Co.* (1992), Ind.App., 591 N.E.2d 586. Despite the abandonment of the privity requirement, Judge Hoffman noted that issue preclusion would not bar the relitigation of an issue unless it was shown that the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue previously. *Id.* at 590 (citing *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation* (1971), 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788). To estop a party who has not been afforded a chance to present evidence and arguments on an issue would offend principles of due process. *Blonder–Tongue, supra,* at 329, 91 S.Ct. at 1443.

■ Assuming for the sake of argument that the City litigated this issue in the *prior* action brought by Officer Smith,[1] we cannot agree that Deluna, injured in an entirely different accident, had the opportunity to present evidence and argument on the issue of which insurer is primarily liable for uninsured motorist coverage. Therefore, Deluna is not precluded from litigating this issue, and we will decide this appeal on the merits.

### II.

Deluna first argues that the City, as a self-insurer, did not have a policy of insurance on his police vehicle, and therefore, was not obligated to provide uninsured motorist coverage. Allstate contends that the

---

1. The two cases were considered contemporaneously in separate Indiana counties.

financial responsibility laws of this state, IND.CODE 9–1–4–3.5, 9–2–1–1 *et seq.* (1988) (repealed and recodified at IC 9–25–1–1 *et seq.* (Burns 1991)) require the City to maintain such coverage on its vehicles.

Under the uninsured motorist coverage statutes existing at the time of Deluna's accident,

(a) Each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, must provide coverage, either in the policy or in a supplement to it:

(1) in limits for bodily injury or death and for injury to or destruction of property set forth in [former] IC 9–2–1–15 under policy provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom; or

(2) in limits for bodily injury or death set forth in [former] IC 9–2–1–15 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured coverage may be offered by insurers in limits higher than the limits of liability specified in the bodily injury and property damage liability provisions of an insured's policy.

IC 27–7–5–2 (1985).

■ When called upon to construe words in a single section of a statute, we must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the purposes of the act. *Griffith v. Jones* (1991), Ind. App., 577 N.E.2d 258, 266. We further presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

Deluna contends that a self-insurer such as the City does not have a "policy of insurance which is delivered or issued for delivery in this state." Technically, he is correct. A policy of insurance is

a contract of insurance or an agreement by which one party, for a consideration, promises to pay money or its equivalent or to do an act valuable to the insured upon the destruction, loss or injury of something in which the other party has a pecuniary interest, or in consideration of a price paid, adequate to the risk, becomes security to the other against loss by certain specified risks; to grant indemnity or security against loss for a consideration.

IC 27–1–2–3(a) (1988); *Eakin v. Indiana Intergovernmental Risk Management Authority* (1990), Ind.App., 557 N.E.2d 1095, *trans. denied.* On the other hand, self-insurance is not insurance at all, but "the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." *Eakin, supra,* at 1098 (quoting *American Nurses Association v. Passaic General Hospital* (1984), 192 N.J.Super. 486, 491, 471 A.2d 66, 69, *aff'd in part,* 98 N.J. 83, 484 A.2d 670). *See also Anderson v. Northwestern Bell Telephone Co.* (1989), Minn.App., 443 N.W.2d 546 (an insurance "policy" is a contract between an insured and an insurer, while self-insurance is separate from and does not include traditional insurance contracts with insureds); *Nassau Insurance Co. v. Guarascio* (1981), 82 A.D.2d 505, 442 N.Y.S.2d 83 ("insurance" exists when a contractual relationship between insurer and insured shifts the risk of loss of the insured to the insurer; "self-insurance" is the assumption of risk of loss by one having an insurable interest);

*Southern Home Insurance Co. v. Burdette's Leasing Service, Inc.* (1977), 268 S.C. 472, 234 S.E.2d 870 (a self-insurer is not an insurer at all, but rather, substitutes for an insurance policy). Nonetheless, as Allstate observes, there is substantial case law treating self-insurance as a policy for purposes of applying uninsured motorist coverage.

In the following cases, the courts concluded that self-insurers were obligated to provide uninsured motorist coverage as though they had offered a standard liability insurance policy: *Hartford Insurance Co. v. Hertz Corp.* (1991), 410 Mass. 279, 572 N.E.2d 1 (legislature did not intend the broad protection of uninsured motorist coverage to be denied those whose sole protection is in the form of a bond purchased by a self-insurer); *Jones v. King* (1989), La. App., 549 So.2d 350, *writ. denied* 552 So.2d 401 (rental company with certificate of self-insurance mandated by the state safety responsibility law to offer uninsured motorist coverage); *Anderson, supra* (court found no sound reason to treat self-insurer any differently from any other insurer in terms of its responsibilities, and concluded that a corporation's self-insurance plan provides uninsured motorist coverage); *Twyman v. Robinson* (1986), 255 Ga. 711, 342 S.E.2d 313 (holding that a certificate of self-insurance is the substantial equivalent of a motor vehicle liability policy; therefore, uninsured motorist coverage will be implied as contained in company's self-insurance plan); *South Carolina Electric & Gas Co. v. Jeter* (S.C.App.1986), 288 S.C. 432, 343 S.E.2d 47 (state's financial responsibility act evinced legislative intent that self-insurer provide the same protection to the public that a liability policy provides); *Modesta v. Southeastern Pennsylvania Transportation Authority* (1983), 503 Pa. 437, 469 A.2d 1019 (state law required self-insured company to maintain adequate funds to compensate persons injured by or on its vehicles required the company to maintain uninsured motorist coverage); *Allstate Insurance Co. v. Shaw* (1980), 52 N.Y.2d 818, 436 N.Y.S.2d 873, 418 N.E.2d 388 (self-insuring car rental company was obligated to provide uninsured motorist coverage to satisfy legislative objective that innocent victims of automobile accidents recover for their losses).

Case law is not, however, uniformly supportive of Allstate's position. Courts in the following decisions arrived at a contrary result: *Lipof v. Florida Power & Light Co.* (1990), Fla.App., 558 So.2d 1067 (self-insurance is not considered a "policy" of insurance for purposes of determining applicability of uninsured motorist coverage); *White v. Regional Transportation District* (1987), Colo.App., 735 P.2d 218; *Robinson v. Hertz Corp.* (1986), 140 Ill.App.3d 687, 95 Ill.Dec. 111, 489 N.E.2d 332, *app. denied* (because state law on uninsured motorist coverage applies only to "policies" and a self-insurer does not issue a "policy," uninsured motorist coverage will not be presumed in this case); *Grange Mutual Casualty Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 487 N.E.2d 310; *American States Insurance Co. v. Utah Transit Authority* (1985), Utah, 699 P.2d 1210; *Nassau Insurance Co., supra* (city, an unregulated self-insurer, was exempt from the requirement of furnishing proof of financial responsibility, and therefore, not required to furnish proof of uninsured motorist coverage); *O'Sullivan v. Salvation Army* (1978), 85 Cal. App.3d 58, 147 Cal.Rptr. 729 (financial responsibility laws do not require uninsured motorist coverage of self-insurers); *Mountain States Telephone & Telegraph Co. v. Aetna Casualty & Surety Co.* (Ariz.App. 1977), 116 Ariz. 225, 568 P.2d 1123 (employer qualified as a self-insurer under state law is not required to provide uninsured motorist coverage); *Shelton v. American Re–Insurance Co.* (1970), 210 Va. 655, 173 S.E.2d 820 (duly certified self-insurer was excluded from the uninsured motorist coverage obligations provided by statute).

■ Although the Indiana statutes quoted above do not explicitly answer this question, we agree with Allstate that the legislature did not intend to exclude a class (self-insurers) from the requirement of providing uninsured motorist coverage. The broad, remedial purpose of uninsured motorist insurance is "to put the injured insured party in substantially the same position as if the offending party had complied

with the minimum requirements of the Financial Responsibility Act." *Town & Country Mutual Insurance Co. v. Hunter* (1985), Ind.App., 472 N.E.2d 1265, *trans. denied.* Allowing persons, corporations, etc., to self-insure their vehicles, rather than purchase a standard automobile liability policy, without requiring them to offer uninsured motorist coverage to the operator of the vehicle would circumvent this legislative objective. As the Pennsylvania Supreme Court observed:

> [T]he sole purpose of self-insurance is to relieve self-insurers of the burden of expending their assets on insurance premiums; self-insurance is not a means by which self-insurers may avoid the claims of those individuals for whose protection the insurance laws have been enacted.

*Modesta, supra,* 503 Pa. at 441–42, 469 A.2d at 1022. Thus, we agree with Allstate that, as a general rule, self-insurers must provide uninsured motorist coverage pursuant to IC 27–7–5–2 *et seq.* Nonetheless, for the reasons set forth below, we conclude that the City is exempt from the requirements of Indiana's uninsured motorist laws.

### III.

■ Prior to 1974, Indiana law empowered municipal corporations to purchase liability insurance on motor vehicles owned, hired, maintained, or used by them in the course of their business. IC §§ 39–1818 to –1820 (Burns Repl.Vol.1965) (repealed 1974). This statute was enacted in response to the decline of the sovereign immunity doctrine in Indiana, which resulted in increased exposure to tort liability for government entities. *See id.* § 39–1819 ("No such policy of insurance shall be purchased ... unless there shall be contained within such policy a provision that if there arises or may arise a claim, ... such insurance carrier will not set up, as a defense, the immunity of the state or of such municipal corporation[.]"). Thus, motor vehicle liability insurance obtained under this statute covered risks of loss for which the state or municipal corporation was not immune. *Cf. Hummer v. School City of Hartford City* (1953), 124 Ind.App. 30, 112 N.E.2d 891 (procurement of insurance un-

der the statute did not have the effect of waiving governmental immunity).

In 1974, our general assembly repealed IC 39–1818 to –1820 (and its short-lived recodification at IC 27–7–4–1 *et seq.*), and replaced it with the Tort Claims Act, IC 34–4–16.5–1 *et seq.* (1974 Ind.Acts, Pub.L. No. 142, §§ 1–3). The Act codified the common law immunities enjoyed by governmental entities (at IC 34–4–16.5–3), but continued to allow political subdivisions to purchase liability insurance. IC 34–4–16.5–18. With respect to the immunities statutorily granted to governmental entities, the Act states:

> A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:
>
>    *    *    *    *    *    *
>
> (9) an act or omission of someone other than the governmental entity employee.

IC 34–4–16.5–3.

An uninsured motorist is clearly a person "other than" a governmental employee. We cannot conclude that the legislature, by enacting the uninsured motorist laws, intended a municipality to be ultimately liable where such an explicit exemption from liability has been crafted. While we acknowledge that the present action is based in contract rather than tort, the similarities between this case and a tort action cannot be overlooked. *See Ross v. Transport of New Jersey* (1989), 114 N.J. 132, 553 A.2d 12 (uninsured motorist claim is a statutory cause of action having many characteristics of a tort action). Allowing recovery against the City for the tort of a person other than a governmental employee would effectively contravene state law in this area.

This conclusion is consistent with the holding of a case based on virtually identical facts. In *State Farm Mutual Automobile Insurance Co. v. Township of Woodbridge* (1991), 251 N.J.Super. 373, 598 A.2d 252, Richard George was injured by an uninsured motorist while George was acting in his capacity as a Woodbridge police officer. State Farm brought a declaratory judgment action seeking a determination that, *inter alia,* the township had sufficient uninsured motorist coverage to satis-

fy George's claim. The court acknowledged the public policy underlying uninsured motorist coverage, but held that the goal of applying such coverage to all possible situations was overridden by the state's Tort Claims Act policy of limiting the liability of a public entity. *Id.* The court in *State Farm* relied on the New Jersey Supreme Court's holding in *Ross, supra,* where the court concluded that the legislature did not intend for governmental entities to provide uninsured motorist coverage. The court in *Ross* stated:

> If [the governmental entity] is exempt under [New Jersey law] from any insurance obligation as a government agency or instrumentality, then this is consistent with policy considerations that limit the potential liability of government agencies through some type of immunity. *See, e.g.,* [The Tort Claims Act].

114 N.J. at 144, 553 A.2d at 18.

Likewise, we believe the policy considerations that limit the liability of governmental entities when the injuries are caused by someone other than the government employee override the considerations expressed by the enactment of the uninsured motorist laws. We note that in the vast majority of cases where, as here, the driver of the vehicle has uninsured motorists coverage in his or her own insurance contract (or has been offered such coverage pursuant to statute), both policy considerations are advanced. This result is especially appropriate given that insurance companies are in a better position than municipalities to absorb such a loss.

While it is true that the legislature has not expressly exempted municipalities from the obligation to provide uninsured motorist coverage, there is no mistaking its intent to immunize government entities from liability in such cases. For these reasons, Allstate was not entitled to judgment as a matter of law.

Reversed.

GARRARD and SHIELDS, JJ., concur.