## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Erie Insurance Exchange

v.

Rapid Rentals, Inc.

August 20, 1998

Case No. (Chancery) 97-233

BY JUDGE EDWARD L. HOGSHIRE

In this suit for declaratory judgment, Plaintiff Erie Insurance Exchange ("Erie") and Defendant Rapid Rentals, Inc., d/b/a Budget Rent A Car ("Budget") have both filed Motions for Summary Judgment on stipulated facts. The issue is which company has primary coverage and which has secondary coverage for a loss resulting from the negligent driving of a rented car by its renter. Counsel have ably presented their respective arguments, both through briefs and orally, to this Court, and the case is ready for decision.

*Stipulated Facts*

On August 10, 1995, Cory Lee Asbury rented a 1995 Lincoln Continental from Budget for personal use. Later that day, Mr. Asbury negligently collided with another vehicle driven by Willie S. Meadows. Mr. Meadows asserted a claim for property damage against Erie and Budget for $540.00. Budget denied Mr. Meadows' claim. Erie paid Mr. Meadows' claim in the amount of $540.00, which was a reasonable amount for settlement. Erie filed this suit for declaratory judgment to establish that Erie's coverage was excess to Budget's primary responsibility, that Budget's denial of coverage was wrongful, and that Budget should reimburse Erie in the amount of $540.00 plus interest from the time of settlement.

The rented vehicle was owned by Budget and principally garaged in Virginia. Budget is self-insured pursuant to the Virginia Motor Vehicle Safety

Responsibility Act. The Rental Agreement between Mr. Asbury and Budget provided in pertinent part:

> *Personal Injury and Property Damage to Others*: Budget provides protection to the extent it is needed to meet the minimum financial responsibility limits required by applicable law after payment of all insurance and protection available to the Authorized Driver in paragraph 5 ... .
>
> (5) Personal Injury and Property Damage to Others: If There Is No Violation of a Use Restriction ... Budget Provides Automobile Liability Protection to Authorized Drivers for causing bodily injury (including death) and property damage to others resulting from the use of the Vehicle, Limited As Follows:
>
> A. Budget's Protection Does Not Apply until after exhaustion of all automobile liability insurance and/or other protection available to the Authorized Driver (personal automobile insurance, employer's insurance, and/or any other protection or indemnification, whether primary, excess or contingent), and then Budget's protection applies only to the extent it is needed to meet, on a cumulative basis with all such liability insurance and/or protection available to the Authorized Driver, the minimum financial responsibility limits required by applicable law.

Stipulation of Facts, Ex. B at 1-4. Mr. Asbury declined to purchase through Budget any "Supplemental Liability Insurance" provided by independent insurance companies as described in the Rental Agreement.

At the time of the accident, Mr. Asbury was the named insured on a policy issued by Erie. This policy provided in relevant part:

> NON-OWNED VEHICLES WE INSURE
>
> We insure for Liability Protection while you are using it, any auto or trailer not owned by you except any auto or trailer furnished or available for your regular use by any governmental agency or unit ... .
>
> OTHER INSURANCE
>
> This policy provides primary insurance for any owned auto we insure. The policy's coverage is excess over any other collectible insurance on an auto we insure that you do not own (including a temporary substitute vehicle), up to the limits of protection for one auto.

> When there is other insurance applicable to the accident on the same basis, we will pay our share. Our share is the proportion that our limit of protection bears to the total of all applicable limits.

Stipulations of Facts, Ex. A at 5, 7.

## Question Presented

Does Virginia law require a self-insured rental car agency to provide authorized drivers primary liability coverage equivalent to omnibus protection? For the reasons set forth below, this question is answered in the affirmative.

## Discussion of Authority

At the outset, the Court notes that excess insurance clause provisions such as those at bar have spawned a diversity of rather arbitrary approaches to determining which carrier has primary liability, including the decision to "abandon the search for the mythical 'primary' insurer and insist instead that both insurers share the loss." *Carriers Ins. Co. v. American Policyholders' Ins. Co.*, 404 A.2d 216 (Me. 1979). However, in reading the applicable statutes in Virginia, the Court finds that the intent of the General Assembly is sufficiently clear to resolve this issue on statutory grounds.

Va. Code § 46.2-108(D) provides that "[n]o person engaged in the business of renting automobiles and trucks without drivers shall rent any vehicle without a driver unless the vehicle is an insured motor vehicle as defined in § 46.2-705." Clearly, since the motor vehicle is being "rented without a driver," the mandated insurance must apply to permissive drivers. The statute places the burden on the rental agency to ensure that the vehicle is insured.

> *"Insured motor vehicle"* means a motor vehicle as to which there is bodily injury liability insurance and property damage liability insurance, both in the amounts specified in § 46.2-472, issued by an insurance carrier authorized to do business in the Commonwealth, or as to which a bond has been given or cash or securities delivered in lieu of the insurance; or as to which the owner has qualified as a self-insurer in accordance with the provisions of § 46.2-368.

Va. Code § 46.2-705.

Virginia law thus requires Budget, as a condition of market entry, to either obtain for its vehicles (and by extension its permissive drivers) liability insurance from an authorized insurer, including property damage insurance to $20,000 as per § 46.2-472(3), or qualify as a self-insurer. If Budget were not self-insured and instead procured property damage liability insurance through an insurance carrier, there would be no question that such insurance was primary since under Code § 38.2-2204 ("the Omnibus Clause"), the following provisions leave little room for interpretation:

> C. No policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued or delivered in this Commonwealth to the owner of such vehicle or shall be issued or delivered by an insurer licensed in this Commonwealth upon any motor vehicle principally garaged or used in this Commonwealth without an endorsement or provision insuring the named insured, and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured, against liability for death or injury sustained, or loss or damage incurred within the coverage of the policy or contract as a result of negligence in the operation or use of the motor vehicle by the named insured or by any other such person … .
>
> D. Any endorsement, provision, or rider attached to or included in any such policy of insurance which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section shall be void … .

Since Code § 38.2-2204(C) specifically requires carriers' property damage policies upon motor vehicles to insure permissive drivers, any attempts to reduce this coverage by declaring it secondary would be in violation of Subsection D. Although a provision for secondary coverage might not reduce the statutory quantum of coverage, the language of Subsection D prohibits a reduction in "the coverage *afforded by the provisions required by this section*." Va. Code § 38.2-2204(D). (Emphasis added.) Thus, if an overlapping policy were deemed to provide primary coverage, a provision declaring the coverage afforded by Subsection C to be secondary would act to reduce that coverage and therefore be void.

It would be anomalous for the General Assembly to permit car rental agencies to avoid obtaining carriers' liability insurance, which, under the Omnibus Clause, must be primary by substituting self-insurance. Nevertheless,

Budget argues that the Virginia Supreme Court distinguishes between commercial liability insurers and self-insurers and implies that the General Assembly intended to exempt self-insurers from the requirements of the Omnibus Clause and, by extension, equal treatment under § 46.2-108. *See* Mem. P. & A. Supp. Def.'s Mot. Sum. J. at 4-5 (*citing William v. City of Newport News*, 240 Va. 425, 428 (1990)).

In *William*, the Court noted that a line of precedent stemming from *Yellow Cab Co. v. Adinolfi*, 204 Va. 815 (1964), held that § 38.1-381, the predecessor of § 38.2-2206 ("the Uninsured Motorist Act"), dealt "only with policies, contracts and insurance companies. Thus a self-insurer is not affected." *Id*. at 818. The Court in *Yellow Cab* explained the distinction between commercial carriers and self-insurers in pragmatic terms specifically directed to the Uninsured Motorist Act:

> The effect of subsection 38.1-381(c) is to exclude from the uninsured motorist coverage the damages caused by the negligence of the operator of the motor vehicle of a self-insured for the reason that the owner of such vehicle has been certified "to be possessed of financial ability to respond to a judgment ... . (Code § 46.1-395(b)) for personal injury or property damage arising from the ownership, use, or operation of such vehicle (Code § 46.1-389(c)).
>
> It is obvious that an insurance company writing motor vehicle liability insurance, and not a self-insurer under the provisions of Code § 46.1-395, is the only party required to discharge the obligations under the mandatory uninsured motorist endorsement in an insurance policy.

*Id*. at 819. Additionally, due to the structure of the uninsured motorist fund in 1964: "It would be highly inequitable to hold that a self-insurer must provide uninsured motorist coverage for its drivers when it has no right to share in the fund accumulated to defray the costs of providing such coverage." *Id*. at 820.

The case at bar does not involve uninsured motorist coverage but instead concerns only the most basic property damage arising out of the authorized use of an agency's vehicle. While the distinction between commercial self-insurers may be relevant in some contexts and still has financial implications with regard to uninsured motorist coverage, *see William*, 240 Va. at 432-33, none of the practical concerns cited in *Yellow Cab* support special treatment for self-insurers under § 46.2-108(D). Furthermore, even in the specific area of uninsured motorist coverage, the General Assembly has acted to extend the liability of self-insurers rather than limit it:

Section 38.2-2206 … still refers primarily to policies, contracts, and insurance companies. However, in 1972, the General Assembly amended the motor vehicle code so that self-insurers of motor vehicles are now required to provide uninsured motorist protection "to the extent required by § 38.2-2206." Code § 46.2-363(B). Therefore, *Yellow Cab* is no longer controlling.

*William*, 240 Va. at 428.

Budget argues that since the General Assembly made "no similar amendment to § 38.2-2204 to expressly include self-insurers within the omnibus requirements," self-insurers should not be governed by the Omnibus Clause. Mem. P. & A. Supp. Def.'s Mot. Sum. J. at 5. However, it should be noted that the amendment extending self-insurer's liability under the Uninsured Motorist Act was not made to § 38.2-2206 but to § 46.2-368, the self-insurance statute. Thus, there was no "similar amendment" to be made to § 38.2-2204. It would have been unnecessary to amend § 46.2-368 to specifically mention omnibus requirements since permissive drivers are already covered by the self-insurance statute. A certificate of self-insurance may be issued when the Commissioner is:

> reasonably satisfied (i) that the person has and will continue to have financial ability to respond to a judgment as provided in this chapter, obtained against the person, arising out of the ownership, maintenance, use, or operation of his motor vehicles and (ii) that the certificate provides for protection against the uninsured or underinsured motorist to the extent required by § 38.2-2206.

Va. Code § 46.2-386(B).

For a self-insured rental agency, judgments arising out of the "use or operation" of its vehicles must necessarily cover its customers as permissive users; to find otherwise would limit self-insurers' liability to accidents caused by the corporate owner itself. Indeed, the General Assembly recently amended § 46.2-386 to provide but two exceptions to the liability of self-insurers for judgments arising out of the use or operation of any motor vehicle covered by the certificate: (1) if the user was not authorized; and (2) if the permissive user prejudicially failed to cooperate in the defense of the claim which resulted in the judgment. Va. Code § 46.2-386(C). As Plaintiff Erie correctly observes:

If the self-insurance permitted by subsection B of the self-insurance statute did not extend to permissive users, then subsection C would be mere surplusage. The latter interpretation would violate the fundamental principle of statutory construction that statutes should be interpreted, if possible, in a manner which gives meaning to every word. *See, e.g., Monument Assocs. v. Arlington County Board*, 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991); *Gallagher v. Commonwealth*, 205 Va. 555, 559, 139 S.E.2d 37, 39 (1964).

Pl.'s Mem. Supp. Mot. Summ. J. at 5-6. The Court notes that § 46.2-386(B) provides a special limitation on protection against the uninsured or underinsured motorist and specifically states that such coverage shall be secondary. Significantly, the statute makes no such provision regarding liability for permissive users.

Thus, in reading the various statutes pertaining to this issue together, the Court finds that, under § 46.2-108(D), persons engaged in the business of renting automobiles must ensure $20,000 of *primary* property damage liability insurance for permissive drivers of owned vehicles, be it by admitted carrier, bond/security, or self-insurance. This reading of § 46.2-108(D) supports the further finding by this Court that although a self-insurer does not technically issue policies on itself, *see Yellow Cab*, 204 Va. at 818, the General Assembly did not intend and public policy does not support the exclusion of self-insurers from the requirements of the Omnibus Clause. Such a finding accords with the Supreme Court of Virginia's position in *City of Norfolk v. Ingram*, 235 Va. 433 (1988), in which, because the issue was raised for the first time on appeal, the Court assumed, without deciding, that a self-insurer was obligated to provide omnibus coverage to permissive users of its motor vehicles. This was also the conclusion of the Circuit Court of the City of Richmond in *Martin v. National Car Rental System, Inc.*, 42 Va. Cir. 179 (1997), and the Circuit Court of Arlington County in *State Farm Mut. Auto. Ins. Co. v. Chrysler Ins. et al.*, Chancery No. 95-647 (Arlington Cir. Ct. Order, Dec. 23, 1996).[1] Finally, the Court finds that, under § 46.2-386, a certificate of self-insurance, as a substitute for traditional insurance, must cover permissive users and should fairly provide the same primary coverage as would be required of traditional insurers; the General Assembly made special provision that

---

[1] The Court finds *Enterprise Rent-A-Car v. Allstate Ins. Co*, Case No. HH-1437-1 (Richmond Cir. Ct. Sept. 30, 1997), relied on by Defendant Budget to be inapposite since that case turned on an analysis of Va. Code § 38.2-2205, which does not apply here. [See below, p. 564.]

uninsured motorist coverage be secondary, but basic property damage liability coverage should and does remain primary.

## Conclusion

For the reasons set forth above, the Court finds that under Virginia law, Budget has primary coverage extending to $20,000.00 for property damage resulting from the authorized use of its vehicle and that its denial of Mr. Meadows' claim was, therefore, without legal justification. The Court grants summary judgment for Erie and will order Budget to reimburse Erie $540.00 plus interest at the statutory rate from February 25, 1997.